**INTERNATIONAL UNDERWRITERS, INC.,**
Appellant,

v.

**Maurice A. BOYLE and National Association
of Internal Revenue Employees,
Appellees.**

**No. 9831.**

District of Columbia Court of Appeals.

Argued April 27, 1976.

Decided Oct. 21, 1976.
Rehearing Denied Nov. 26, 1976.

David L. Cohen, Washington, D. C., with whom Jack L. Lahr, Washington, D. C., was on the brief, for appellant.

David J. Hensler, Washington, D. C., with whom Edward F. Glynn, Jr., Washington D. C., was on the brief, for appellees.

Before KELLY, FICKLING and KERN, Associate Judges.

KELLY, Associate Judge:

International Underwriters, Inc. (hereinafter I.U.) appeals here from orders of summary judgment dismissing its complaint against appellees for breach of fiduciary duty, inducement of the breach, civil conspiracy, interference with corporate opportunities and unfair competition. We reverse the orders in part with respect to each appellee and remand the case for trial.

The following facts are uncontradicted. For a number of years prior to 1972, I.U. served as the broker on three group insurance policies held by the National Association of Internal Revenue Employees [1] (hereinafter NAIRE) for the benefit of its members. The coverage included a group life insurance policy underwritten by Connecticut General Life Insurance Co., a long

---

1. The organization is now known as the National Treasury Employees Union.

term disability and an accidental death and dismemberment policy, both underwritten by the Home Insurance Co. On the life insurance policy, I.U. received an agent's commission equal to 3% of premiums,[2] while NAIRE received an administrative allowance from Connecticut General of 2% of premiums. In servicing the Home policies, I.U. performed administrative duties such as soliciting NAIRE members to participate in the plans, handling claims and records, and collecting and remitting premiums. Home paid I.U. a commission equal to 25% of premiums. From this sum NAIRE was paid an administrative allowance amounting to 5% of premiums.

The commissions I.U. received from the NAIRE policies constituted its greatest source of income. Between October 1, 1970 and September 30, 1972, these commissions amounted to more than one-third of I.U.'s total commission income.

Some time during the early part of 1972, NAIRE's president, Vincent Connery, determined that the association would benefit by undertaking the complete administration of its group insurance policies. Connery hoped to garner for NAIRE the administrative allowances then being paid to I.U. In addition, he felt that NAIRE would be able to administer the policies more efficiently than I.U. Under Connery's plan, NAIRE would receive a 20% administrative allowance on the Home policies with 5% of premiums left to I.U. as commissions. Connery hoped to obtain the entire share of the commission received by I.U. on the Connecticut General policy.

In July of 1972 Connery met with appellee, Maurice A. Boyle, who was then serving as a corporate officer of I.U. in charge of its group insurance business. Boyle spent a substantial amount of time on the NAIRE accounts serving as the day-to-day contact man between I.U. and NAIRE.

His duties included supervising the billing of the NAIRE insureds and he oversaw the conversion of the billing operation from a manual to a computerized system.

At their July meeting, Connery informed Boyle of his plan to take over the administration of the group insurance policies and asked Boyle to come to work for NAIRE as the supervisor of their new operation.[3] Boyle accepted Connery's tentative offer the following month while he was still in I.U.'s employ. Shortly thereafter, he surreptitiously copied and removed from I.U.'s offices 14,000 electronic data processing cards used in the billing of NAIRE insureds. Boyle continued working for I.U. until his firing on September 21, 1972. At no time did he inform I.U. of Connery's plan.

On September 21, 1972, the day before his plan was to be submitted to the NAIRE executive board, Connery met with I.U.'s president, Donn Wise. Connery outlined his proposal to Wise and also informed him of Boyle's defection. Wise refused to acquiesce in the proposed arrangement.

■ Following board approval of the plan, NAIRE informed its insurance carriers that it wished to replace I.U. with a new broker, Paul Burke Associates. Connecticut General permitted the substitution of Burke and thereafter paid NAIRE the full 5% that formerly had been divided between I.U. and NAIRE. Because of a separate agreement it had with I.U., the Home Insurance Co. was unable to permit a substitution of brokers. NAIRE cancelled its insurance with Home and placed new policies with the Hartford Insurance Co. and Insurance Co. of North America (INA). Hartford paid NAIRE a 5% promotional allowance plus a 15% commission and fee to Paul Burke Associates. Burke

---

2. I.U. performed no significant administrative duties on this policy.

3. The job offer, as well as the plan itself, was subject to the formal approval of the NAIRE executive board at its next scheduled meeting September 22, 1972.

agreed to pay NAIRE up to 14% of this amount as an administrative allowance. INA agreed to pay NAIRE a 20% administrative allowance with no commission fee being paid to Burke.[4]

In its complaint, I.U. charged Boyle with breaching the fiduciary duty owed it by, among other things, failing to apprise I.U. of the imminent loss of the major portion of its commission income. I.U. alleged that NAIRE was liable for this alleged breach as a third party for inducing Boyle's disloyalty. I.U. maintained that with advance warning of Connery's plan, it would have had time to formulate a counter-proposal or undertake other persuasive efforts that might have preserved for it some share of the allowances sought by Connery for NAIRE.

I.U. conceded that considered alone, NAIRE had a legal right to assume all the administrative duties in relation to its group insurance and to terminate I.U. as its broker.[5] It maintains, however, that because NAIRE chose unlawful means (*i. e.*, by inducing Boyle's disloyalty) to facilitate its assumption of administrative duties, it is liable for the actions taken in furtherance of this otherwise lawful goal under a theory of civil conspiracy.

In granting NAIRE's motion for summary judgment the trial court concluded:

> The claims asserted against NAIRE . . . for unlawful conspiracy . . . and enticement to breach fiduciary duties, are unsupported by any probative evidence and fail to state any cause of action upon which relief could be granted.

With respect to Boyle's motion the judge stated:

> . . . I am satisfied that there are no material issues in dispute and I am satisfied that, as a matter of law, there has been no breach of fiduciary obligation by the defendant Boyle.

At the outset we note that in deciding a motion for summary judgment it is not the function of the court to resolve any fact issues but rather merely to determine whether any factual issue pertinent to the controversy exists. *Nyhus v. Travel Management Corp.,* 151 U.S.App.D.C. 269, 271, 466 F.2d 440, 442 (1972), citing *Dewey v. Clark,* 86 U.S.App.D.C. 137, 143, 180 F.2d 766, 772 (1950). *See* Super.Ct.Civ.R. 56(c). The moving party on the motion has the burden of showing the absence of a genuine issue as to any material fact and for this reason the material lodged in support of the motion must be viewed in the light most favorable to the opposing party. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In order to survive the summary judgment motion, the opposing party need only show that there is sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). Summary judgment is appropriate only where "it is quite clear what the truth is . . . ." *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944). A doubt as to whether or not an issue of fact has been raised is enough to preclude a

---

4. In one of its counts for civil conspiracy, I.U. alleged that the administrative allowances obtained by NAIRE included unlawful commissions and rebates in violation of D.C. Code 1973, §§ 35–715, –1201. In opposing NAIRE's motion for summary judgment, however, I.U. failed to meet its burden under Super.Ct.Civ.R. 56(e) of "setting forth specific facts" showing NAIRE's compensa-

tion was excessive in relation to the services it performed. Accordingly, we affirm the grant of summary judgment with respect to this count.

5. There was no written contract between I.U. and NAIRE regarding I.U.'s continued brokerage services.

grant of summary judgment. *Washington Post Co. v. Keogh,* 125 U.S.App.D.C. 32, 34, 365 F.2d 965, 967 (1966).

■ This court's function on appeal of a grant of summary judgment is to determine whether there was any issue of fact pertinent to the ruling, *Bloomgarden v. Coyer,* 156 U.S.App.D.C. 109, 114, 479 F. 2d 201, 206 (1973), and we are not bound by the trial judge's findings. *E. P. Hinkel v. Manhattan Co.,* 165 U.S.App.D.C. 140, 506 F.2d 201 (1974).

■ We conclude that with respect to the allegations of a breach of fiduciary duty by Boyle, inducement of the breach by NAIRE and civil conspiracy by both parties, issues were raised which require resolution by a fact-finder at trial. Accordingly, the summary judgment orders entered in favor of appellees must be reversed.

■ I.U.'s contentions regarding Boyle's alleged breach of fiduciary duties were supported by Boyle's admissions that he had failed to disclose Connery's plan to I. U., and that he had duplicated and removed from I.U.'s offices the computerized billing cards used in connection with the NAIRE account. As an agent of I.U., Boyle owed his employer the duty of undivided loyalty. *Restifo v. Pastor,* D.C. Mun.App., 129 A.2d 533, 536 (1957). Further, he had a duty to disclose to I.U. any knowledge he obtained which was relevant to his agency relationship with I.U. *Yelen v. Banks,* D.C.Mun.App., 146 A.2d 569, 571 (1958). We believe that Boyle's admissions were sufficient to raise an issue as to whether Boyle breached fiduciary duties owed to I.U.

■ Appellees urge that even assuming Boyle's acts constituted fiduciary breaches, the damage I.U. complains of (*i. e.,* the loss of commission income) was not a proximate result of these actions. We recognize that summary judgment would be appropriate here if, considering all the evidence, it could be said that the appellees would be entitled to a directed verdict should this evidence be presented at trial. *Dyer v. MacDougall,* 201 F.2d 265, 268 (2d Cir. 1952). However, we believe that I.U.'s materials lodged in opposition to the motion for summary judgment were sufficient to raise an issue of fact with respect to the element of proximate cause. In his presentation to the NAIRE executive board, Connery stated that under his plan the same billing system would be utilized which was then in use. His discussion continued with a detailed description of how I.U.'s computerized billing system functioned. It is reasonable to infer that this facet of Connery's plan contributed to its ultimate approval. We think a causal link between Boyle's copying of the cards and the ultimate approval of Connery's plan may therefore be inferred, assuming that an issue of fact is raised as to whether Connery induced Boyle to copy the cards.[6] Further, we believe an issue of fact is raised concerning the possibility of a causal connection between Boyle's failure to reveal Connery's proposal to I.U. and the plan's final approval. I.U. noted that its president, Donn Wise, had a long-standing professional relationship with Connery and that Connery had promised him I.U. would be kept as NAIRE's broker as long as Connery was president of NAIRE. As noted *supra,* Boyle learned of Connery's plan approximately two months before the NAIRE executive board was scheduled to meet. Given this lead time, the possibility cannot be ruled out that I.U. could have persuaded either Connery or the NAIRE executive board to modify or delay the proposed takeover.

6. The absence of evidence that NAIRE ever used the cards or implemented a computerized billing system does not compel a finding that the copying of the cards had nothing to do with NAIRE's decision to assume administration of its insurance. The billing plan outlined by Connery may have been discarded in the face of the impending legal controversy caused by I.U.'s termination.

NAIRE is liable as a third party for Boyle's alleged breaches of fiduciary duty if it can be shown to have induced this conduct. *Group Association Plans, Inc. v. Colquhoun,* 151 U.S.App.D.C. 298, 300, 466 F.2d 469, 471 (1972). NAIRE denies it induced Boyle's copying of the cards and argues strongly that it lacked any motive for inducing this act.[7] NAIRE points to the lack of any evidence, noted *supra,* that it utilized the cards in question. It also notes that it already possessed the information contained on the cards, albeit not in a computerized format. A trier of fact could, of course, infer from these facts that NAIRE was innocent of having induced Boyle's misconduct. We believe, however, that a contrary inference may be drawn from certain additional relevant facts.

It is reasonable to assume that Connery's purpose in seeking Boyle's future services was to achieve a degree of continuity as the administrative duties, formerly performed by I.U. under Boyle's direction, were undertaken by NAIRE. We have noted already that Connery originally intended to utilize a computerized billing system identical to that employed by I.U. By obtaining duplicates of I.U.'s billing cards, Connery could have further aided the transition of administrative duties by saving NAIRE the expense of key punching new cards.[8] Given these circumstances, a factfinder at trial could reasonably disbelieve NAIRE's denials that it induced Boyle to copy the cards. Where an issue of fact "turns upon a choice between permissible inferences from undisputed evidence," summary judgment is inappropriate. *Washington Post Co. v. Keogh, supra,* 125 U.S.App.D.C. at 34, 365 F.2d at 967.

The gist of I.U.'s complaint of civil conspiracy is the alleged breach of fiduciary duties by Boyle and inducement of those breaches by NAIRE as outlined above. *See Ewald v. Lane,* 70 App.D.C. 89, 104 F.2d 222 (1939); *Blankenship v. Boyle,* 329 F.Supp. 1089 (D.D.C.1971), motion den., 145 U.S.App.D.C. 111, 447 F.2d 1280 (1971). If I.U. can establish that NAIRE participated in or induced the alleged wrongful actions of Boyle pursuant to an agreement, then it is liable as a conspirator for the damages proximately caused by these wrongs. *Blankenship v. Boyle, supra* at 1099.

NAIRE denies the existence of any agreement between it and Boyle and reiterates its supposed lack of motive for engaging in the alleged wrongful acts. NAIRE emphasizes that because it had a legal right to terminate I.U. as its broker, it did not have to conspire with Boyle to supplant I.U. as the administrator of its group insurance. This argument, however, does not negate the possibility that NAIRE's agent, Connery, determined that this lawful goal would be facilitated by the use of unlawful means (*i. e.,* the inducement of misconduct by Boyle).

A civil conspiracy has been defined as "an agreement—together with an overt act—to do an unlawful act, or a lawful act in an unlawful manner." *Edwards v. James Stewart & Co.,* 82 U.S.App.D.C. 123, 125, 160 F.2d 935, 937 (1947), quoting *Cooper v. O'Connor,* 69 App.D.C. 100, 107, 99 F.2d 135, 142, *cert. denied,* 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 414 (1938). Therefore, even if the object of a civil conspiracy would be otherwise lawful, this fact is irrelevant in the face of the use of unlawful means to achieve the conspirators' goal.

As noted above, the moving party on a motion for summary judgment has the burden of showing that there is no issue as to

---

7. NAIRE does not deny that Boyle was induced to maintain silence regarding Connery's plan, but bases its defense of this claim on the argument that Boyle breached no fiduciary duty by failing to reveal Connery's plan to I.U. Because we have already found that

an issue was raised as to whether Boyle's silence constituted a fiduciary breach, we need not discuss this matter further.

8. I.U. estimated that $17,000 in salaries was expended in key punching the cards.

any material fact and the materials lodged in support of the motion must "set forth such facts as would be admissible in evidence . . . ." Super.Ct.Civ.R. 56(e). We find that NAIRE's arguments as to its supposed lack of wrongful motive were not sufficient to carry the burden contemplated by Rule 56. *See Weiss v. Kay Jewelry Stores, Inc.,* 152 U.S.App.D.C. 350, 358, 470 F.2d 1259, 1267 (1972). Moreover, "[S]ummary judgment is not usually appropriate when the issue raised concerns a subjective state of mind [*i. e.,* motive]." *Washington Post Co. v. Keogh, supra,* 125 U.S.App.D.C. at 34, 365 F.2d at 967. *See also White Motor Co. v. United States,* 372 U.S. 253, 259, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963); *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). Because the record in this case does not show that I.U. would not be entitled to prevail "under any discernible circumstances," the summary judgment against it was unwarranted. *Weiss v. Kay Jewelry Stores, Inc., supra,* 152 U.S.App. D.C. at 363, 470 F.2d at 1272.

*Reversed in part and remanded for trial.*