**FRANKLIN INVESTMENT CO., INC., Appellant,**

v.

**John L. HUFFMAN et al., Appellees.**

**No. 12485.**

District of Columbia Court of Appeals.

Argued March 15, 1978.

Decided Oct. 4, 1978.

Rehearing and Rehearing En Banc Denied Dec. 27, 1978.

**120**

Bernard D. Lipton, Silver Spring, Md., for appellant.

Gregory M. Murad and Randell H. Norton, Washington, D. C., with whom Stephen D. Keeffe, Washington, D. C., was on brief, for appellees.

Before NEWMAN, Chief Judge, and KERN and HARRIS, Associate Judges.

HARRIS, Associate Judge:

In a jury trial appellee Huffman was awarded $6,000 in damages for the failure of appellant Franklin Investment Company (Franklin) to provide insurance on Huffman's car. The jury found no liability on the part of appellee Motors Insurance Company (Motors), which Franklin had joined as a third party defendant under Super.Ct. Civ.R. 14. Franklin appeals from the jury's verdicts in favor of Huffman and Motors and from the motions judge's granting of summary judgment against Franklin on the issue of liability. We find the granting of summary judgment against Franklin to have been erroneous, and remand the case for a new trial.

I

In March 1975, appellee Huffman purchased an automobile from Lustine Chevrolet on an installment contract. Pursuant to the contract, Huffman was to maintain collision insurance on the automobile. Subsequently, Lustine Chevrolet assigned its rights under the contract to Franklin; Huffman was so notified.

In June 1975, Huffman received notice from his automobile insurance company, Motors, that his policy would be cancelled effective July 4, 1975, unless he paid the amount due on the policy by that date. On June 5, 1975, Franklin informed Huffman by letter that Motors had notified it that the policy was going to be cancelled effective July 4, 1975. It further advised Huffman that it was his obligation under the installment contract to provide collision insurance and that if proof of insurance was not provided by the cancellation date, this would "result in [Franklin's] having to enforce the contract terms."

At this point the facts become uncertain. Franklin alleges that it heard nothing further from Huffman, and that it therefore purchased a policy through Bankers Mutual Insurance Company and charged Huffman's account with the premium cost and a finance charge. Huffman alleges the following. On or about June 6, 1975, he spoke with Franklin concerning obtaining insurance. During this communication, Franklin offered to provide him with collision insurance and add the additional costs to his account. Huffman accepted the offer, and Franklin notified him by letter that pursuant to his request it had provided him with insurance and had charged his account with the premium cost and a finance charge.

The parties agree that on or about July 11, 1975, Franklin received notice from Motors that the premium on Huffman's original policy with it had been paid. Accordingly, believing that Huffman had paid the premium, Franklin cancelled the later-

obtained Bankers Mutual policy and credited Huffman's account with the amount it previously had charged him. On October 17, 1975, Huffman was involved in an accident in which approximately $1,000 in damages was sustained by his automobile. He requested that Franklin submit an insurance claim for that damage. Franklin advised him to submit his claim to Motors, not to Bankers Mutual. Huffman then filed a claim with Motors, which rejected it on the ground that, contrary to its prior notice to Franklin (which had been sent erroneously by Motors), the premium on the policy with Motors in fact had not been paid. Motors stated that it would honor a claim from Franklin, but not one from Huffman.

On October 21, 1975, Huffman released the automobile to Franklin so that Franklin could submit a claim to Motors. An official of Franklin advised Huffman that it would file a claim against Motors and that the automobile would be returned to him. Motors had the automobile examined by a claims adjuster, and it was repaired at a price agreed upon by Motors and the repair shop. Franklin filed a lienholder's claim with Motors, but Motors refused to pay it. In December 1975 the repair shop asserted a mechanic's lien. Franklin thereupon paid the repair shop's bill and repossessed the automobile.

Motors informed Franklin that it would honor Franklin's claim if Huffman had no redemption rights on the automobile. Franklin refused to accept this condition. Huffman declined to redeem the car, and Franklin resold it to Lustine Chevrolet pursuant to the terms of the original installment contract. In February 1976, Franklin offered Huffman the opportunity to repurchase the automobile in settlement of any claim he had against it. Huffman declined that offer, and on March 16, 1976, he was notified by Franklin that it had sold the automobile.

On March 18, 1976, Huffman filed suit against Franklin for breach of contract in refusing to pay the cost of repairs and for negligence in failing to notify him that it had cancelled his insurance policy with Bankers Mutual. Franklin joined Motors as a third party defendant, alleging that any damage to Huffman had resulted from the negligent and willful acts of Motors.

At a pretrial motions hearing, Huffman and Motors both moved for summary judgments in their favor. The motions judge granted Huffman's motion as to liability only, and denied Motors' motion. In the subsequent trial the issues for jury resolution thus were (1) the amount of damages incurred by Huffman, (2) the liability *vel non* of Motors to Franklin, and (3) assuming such liability, the amount of damages experienced by Franklin. The jury returned a verdict of $6,000 against Franklin on Huffman's claim, and found Motors not liable on the third-party claim.

## II

Franklin alleges numerous errors in the trial court, including the granting of summary judgment against it on the issue of liability to Huffman. As noted, we conclude that summary judgment as to Franklin's liability to Huffman was granted improperly.

Super.Ct.Civ.R. 56(c) provides that summary judgment shall be rendered only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Basch v. George Washington University,* D.C.App., 370 A.2d 1364 (1977). Summary judgment is appropriate only where it is clear what the truth is. *International Underwriters, Inc. v. Boyles,* D.C.App., 365 A.2d 779, 782 (1976). In order to defeat a summary judgment motion, the opposing party need only show that there is "sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Ibid.* Therefore, in reviewing rulings on summary judgment motions, "our function is to determine whether any issue of fact pertinent to the ruling exists, and in doing so we are not bound by the findings of the trial court." *Owens v. Tiber Island Condominium Association,* D.C.App., 373 A.2d 890, 894 (1977) (citation omitted).

In granting summary judgment as to Franklin's liability to Huffman, the trial court necessarily found that there was no genuine issue as to any material fact affecting liability. After thoroughly reviewing the record, we hold that this finding was erroneous.

The trial court's ruling does not specify the ground on which summary judgment was granted. However, it is apparent that a finding of liability in this case properly could be based on a theory of either contractual obligation or negligence, or both. We do not believe that either of these theories could support the granting of summary judgment on this record.

The installment contract provides no basis for imposing liability on Franklin, for it specifically placed the obligation for the procurement of collision insurance on Huffman. On the other hand, the trial court might have found that Huffman and Franklin agreed to a separate contract which required Franklin to procure insurance for Huffman. However, such a conclusion properly would have to be based on a finding that there was mutual assent or a "meeting of the minds" between the parties, manifested by some type of offer by Franklin which was accepted by Huffman. See J. Calamari & J. Perillo, Contracts § 11 (1970); A. Corbin, Contracts §§ 3, 9 (1963); S. Williston, Contracts § 23 (3d ed. 1957). The existence of these elements is contested by Franklin, which claims that it never made such an offer and that the parties never mutually assented to Franklin's assuming an obligation to procure the insurance. Rather, Franklin claims that it acted gratuitously to protect its security in the automobile.

Since Huffman can point to no persuasive countervailing evidence of an initial offer to procure insurance by Franklin or of mutual assent by both parties as to the assumption of such an obligation, we conclude that Franklin has shown that there is sufficient evidence to support its claim of a genuine factual dispute. That dispute therefore should have been reserved for jury resolution. See International Underwriters, Inc. v. Boyle, supra, at 782–83. Thus, the trial court could not properly have granted summary judgment on the ground of a contractual obligation by Franklin.

In order to have ruled properly on a negligence theory in granting summary judgment, the trial court would have had to find, as a matter of law, that Franklin owed Huffman a duty to act according to a particular standard of care, and that that duty was breached. See Prosser, Torts § 30 (4th ed. 1971). In so doing, the trial court would have had to determine that there was no genuine issue of material fact as to those elements of negligence. See Super.Ct. Civ.R. 56(c).

Even though Franklin was under no contractual obligation to provide Huffman with the insurance policy, once it had done so and had so notified Huffman, it was estopped from arguing the absence of an obligation since its conduct subjected it to a new legal obligation under the case law applicable to gratuitous undertakings. As we previously have stated:

> One who, by a gratuitous promise or other conduct which he should realize will cause another reasonably to rely upon the performance of definite acts of service by him as the other's agent, causes the other to refrain from having such acts done by other available means is subject to a duty to use care to perform such service or, while other means are available, to give notice that he will not perform. [Dawson v. National Bank & Trust Co., D.C.App., 335 A.2d 259, 261 (1975) (quoting Restatement (Second) of Agency § 378 (1958); See Tauber v. Jacobson, D.C.App., 293 A.2d 861, 865 (1972); S. Williston, Contracts § 138, at 597–98 (3d ed. 1957).]

Thus, assuming arguendo that Huffman's reliance on Franklin's gratuitous promise reasonably caused him to refrain from procuring insurance himself, Franklin was subject to a duty to act with care to protect Huffman's interest. However, Motors mistakenly notified Franklin of a premium payment on the Motors insurance policy and Franklin inferred from this that Huffman had paid the premium. In view of these circumstances, we believe that it was a question of fact for the jury as to what

Franklin's duty of care required it to do in this situation. Thus the trial court could not properly have determined as a matter of law that formal notice to Huffman of the cancellation of the Bankers Mutual policy was required of Franklin under its duty of care. Even if we assume again, arguendo, that Franklin's duty of care required it to give notice to Huffman, there exists a question of fact requiring jury resolution as to whether Franklin's crediting of Huffman's account with the Bankers Mutual policy premium amount constituted sufficient notice. Therefore, the trial court could not properly have grounded its grant of summary judgment on a negligence theory.

There being no legal theory upon which the trial court properly could have granted summary judgment against Franklin as to liability, we reverse and remand the case for a new trial on all issues.*

*Reversed and remanded.*

---

* Appellant also questions the sufficiency of the trial court's instructions as to damages. While we have serious reservations about the adequacy of the instructions which were given on this issue, we trust that this problem will be remedied in a new trial.