Helen GLEKAS, et al., Appellants,

v.

BOSS & PHELPS, INC., Appellee.

No. 80–31.

District of Columbia Court of Appeals.

Argued Sept. 18, 1980.

Decided Oct. 23, 1981.

---

Jacob Sheeskin, Rockville, Md., for appellants.

Joseph F. Cunningham, Washington, D.C., with whom Martha W. McClellan, Washington, D.C., was on brief, for appellee.

Before NEBEKER and HARRIS, Associate Judges, and GALLAGHER,* Associate Judge, Retired.

* Judge Gallagher was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on February 27, 1981.

1. The parties apparently stipulated that George Glekas was the agent of the Glekases, despite the fact that the Glekases never received or asked for status reports from George Glekas.

GALLAGHER, Associate Judge, Retired:

The sole question on this appeal is the propriety of the trial court's decision to grant the defendant's motion for summary judgment. Helen, Pota, and Alexandra Glekas, the plaintiffs below and appellants in this action, sought a judgment against the defendant, Boss & Phelps, Inc., for breach of a real estate management contract and for negligently performing duties owed to the Glekases. The Glekases alleged that a fire insurance policy covering their real property known as 7813–7815 Georgia Avenue, N.W., expired due to Boss & Phelps' failure to see that a timely renewal of the policy was made; that this failure was a breach of Boss & Phelps' obligation to the Glekases; and that, as a result of this breach, the property was not covered by a policy when a fire occurred and caused substantial damage several months later. The trial judge found no material facts in dispute and granted Boss & Phelps' motion for summary judgment both on the breach of contract and the negligence theories. Because there are material facts in dispute, we must reverse.

The undisputed facts are as follows: The Glekases are the fee simple owners, as tenants in common, of the Georgia Avenue property that is central to this suit. George Glekas, husband of Helen Glekas, was the agent of the Glekases and generally handled all business and insurance matters concerning the property.[1] The Glekases had an oral agreement with Mr. Reuben Bogdanoff,[2] an insurance broker, to keep the insurance on their property in force. In addition, the Glekases had an agreement with Boss & Phelps to manage their property.

The agreement between the Glekases and Boss & Phelps was made during a meeting in January 1970 at the home of George Glekas, and, thereafter, Boss & Phelps col-

Depositions at 72 and 88. There is, however, some testimony that Pota Glekas shared in the responsibility for seeing that the insurance did not expire and that George Glekas was not active at all in business matters in 1977 due to his poor health. Depositions at 23–26.

2. Mr. Bogdanoff was a defendant below but is not a party to this appeal.

lected the rent on the property and paid the bills, including the fire insurance premiums. Boss & Phelps also kept a calendar noting when the Glekases' insurance policy would expire and kept a copy of their insurance policy on file.

The District of Columbia Property Insurance Facility issued an insurance policy to George, Pota, and Alexandra Glekas which ran from July 25, 1976 to July 26, 1977. The policy was not renewed and expired on July 25, 1977. A fire occurred on September 5, 1977 and damaged the Georgia Avenue property. George Glekas, who had been ill for several months, was in the hospital on the date of the fire and died on November 18, 1977.

The disputed facts center principally around both the form of the agreement between the Glekases and Boss & Phelps and the content of that agreement. Boss & Phelps contends that the agreement was oral and that their only responsibility to the Glekases was to collect the rent from the property and pay the bills and insurance premiums, when so directed.[3] Boss & Phelps claims it had the authority to renew the insurance policy only upon the request of George Glekas. The Glekases, on the other hand, maintain that the agreement made in January 1970 was a formal, written agreement and that this agreement was signed by George, Pota, and Alexandra Glekas. None of the appellants recalls the precise provisions of the contract, and they claim they did not receive a copy of the contract. They do recall, however, that Mr. Jerry Morris, an employee of Boss & Phelps, assured them that he would "take care of everything,"[4] concerning their Georgia Avenue property. They assert that "everything" includes an obligation actually to renew the fire insurance before the expiration date or to oversee Mr. Bogdanoff in his obligations with respect to the renewal of the fire insurance policy. Implicit in appellants' arguments is that Boss & Phelps, at the very least, had an obligation to see that the Glekases were properly and effectively notified of any approaching fire insurance expiration dates.[5]

Aside from the disputed facts which center around the form and the content of the agreement between the parties, there are several other material facts in dispute. It is not clear, for example, whether Mr. Morris was apprised of the serious nature of George Glekas' illness[6] or whether any of the other Glekases had taken over George's role as agent for the Glekases during the period of his illness and hospitalization. In addition, conflicting testimony was given during the depositions as to whether Mr. Morris notified Mr. Bogdanoff prior to the expiration of the Glekases' policy.[7]

It is well settled that summary judgment is only appropriate when no genuine issue of material fact exists. Super.Ct.Civ.R. 56(c). In *Dewey v. Clark*, 86 U.S. App.D.C. 137, 143, 180 F.2d 766, 772 (1950), Judge Fahy summarized the factors to be considered in determining whether summary judgment is appropriate:

(1) Factual issues are not to be tried or resolved by summary judgment procedure; only the existence of a genuine and material factual issue is to be determined. . . . (2) In making determination doubts . . . are to be resolved against the granting of summary judgment; (3)

---

3. Depositions at 130.

4. Depositions at 16 and 96.

5. Boss & Phelps may be conceding that it owed some duty to notify the Glekases of the approaching expiration date. At the deposition of Mr. Morris he stated: "I fulfilled my obligation by notifying not only Mrs. Glekas, but also the broker. But for me to go back and check . . . no. . . . I assumed the broker was going to fulfill his obligation." Deposition at 165.

6. Mr. Morris contradicted himself somewhat in the course of his deposition. At one point he stated: "Mr. Glekas had been very ill. I can recall he might have been in the hospital at that time." Deposition at 167. Subsequently, he stated: "I knew he was ill; not extremely ill." Deposition at 177.

7. Mr. Bogdanoff claimed that he received no notification prior to the expiration date of the policy, but that Mr. Morris did call him after the fire to inquire whether the Glekases' policy had been renewed. Depositions at 205–06.

There may be no genuine issue even though there is a formal issue. Neither a purely formal denial nor, in every case, general allegations, defeat summary judgment. On this point the cases decided by this court must rest on their own facts rather than upon a rigid rule that an assertion and a denial always preclude the granting of summary judgment. . . . (4) If conflict appears as to a material fact the summary procedure does not apply unless the evidence on one or the other hand is too incredible to be accepted by reasonable minds or is without legal probative force even if true; (5) To support summary judgment the situation must justify a directed verdict.

Later cases have utilized the considerations articulated in *Dewey v. Clark, supra.* These later cases have stressed that a party moving for summary judgment has the burden of proving there is no issue of material fact and that all inferences which may be drawn from subsidiary facts are to be resolved against the movant. *See, e.g., Willis v. Cheek,* D.C.App., 387 A.2d 716, 719 (1978); *Malcolm Price, Inc. v. Sloane,* D.C. App., 308 A.2d 779, 780 (1973).

█ Moreover, as a general proposition, summary judgment is likely to be inappropriate when issues of motive or intent are material and should be used sparingly in such cases. *See generally* 6 Moore's Federal Practice ¶ 56.17 [41.–1] at 56–930 (1980). *See also International Brotherhood of Painters and Allied Trades v. Hartford Indemnity Co.,* D.C.App., 388 A.2d 36, 42–44 (1978); *Willis v. Cheek, supra* 387 A.2d at 719. Thus, in a contracts case, when there is " '[a] question of interpretation of an integrated agreement [it] is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence.' " *1901 Wyoming Avenue Cooperative Association v. Lee,* D.C.App., 345 A.2d 456, 461 n. 8 (1975) (quoting in part Restatement (Second) of Contracts § 238(a) and Comment d (Tent. Drafts Nos. 1–7, 1973)). Similarly, issues of negligence frequently are not susceptible of summary adjudication, but should be re-

solved by trial in the ordinary manner. *See, e.g., Franklin Investment Co. v. Huffman,* D.C.App., 393 A.2d 119, 122–23 (1978) (summary judgment held inappropriate; question of fact for the jury as to what duty of care required under the circumstances). *See generally* 6 Moore's, *supra* ¶ 56.17 [42] at ·59–946.

A finding of liability in this case might be based on a theory of contractual obligation or a negligence theory. Because there are material facts in dispute relevant to both of these theories, summary judgment should not have been granted on either theory.

## I. The Breach of Contract Theory

█ We first address the breach of contract theory, for where questions of a breach of an agency contract and negligence arise, the better analysis initially focuses on the nature of the contract and the breach of that contract. *See Bogley v. Middleton Tavern, Inc.,* 42 Md.App. 314, 324, 400 A.2d 15, 21 (Ct.Spec.App.1979) *rev'd on other grounds,* 288 Md. 645, 421 A.2d 571 (1980). It is fundamental that the relationship between an agent and his principal arises from a contractual agreement and that his contract defines the scope and extent of the agency. *Investment Co. Institute v. Camp,* 274 F.Supp. 624, 639 (1967), *rev'd on other grounds sub nom. National Association of Securities Dealers v. SEC,* 163 U.S.App.D.C. 241, 420 F.2d 83 (1969), *rev'd,* 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971); *Brown v. Coates,* 102 U.S.App.D.C. 300, 303, 253 F.2d 36, 39 (1958). In performing an agency contract, an agent is bound to use reasonable care and skill. *Yelen v. Banks,* D.C.Mun.App., 146 A.2d 569, 571 (1959). *See also Consolidated Sun Ray, Inc. v. Lea,* 401 F.2d 650, 656 (3d Cir. 1968), *cert. denied,* 393 U.S. 1050, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969).

█ Given the importance of an agency contract in determining the extent of an agent's obligations, we cannot agree with appellee's assertion that any dispute as to the form of the contract is irrelevant to our determination of the appropriateness of

summary judgment. In the absence of ambiguity, a written contract duly signed and executed speaks for itself and is binding on the parties. *Gagnon v. Wright*, D.C.App., 200 A.2d 196, 198 (1964). *See generally* J. Calamari and J. Perillo, Law of Contracts § 3–2, at 99 (1977) (existence of an integrated written contract precludes the use of parol evidence to vary or contradict its terms). A written contract would set out the relationship of the parties as well as the obligations of Boss & Phelps with respect to the appellants' property and possibly obviate the need for a jury determination of Boss & Phelps' contractual obligations. A jury reasonably could find that Mr. Morris did reduce the agreement to writing. Two witnesses testified to this in their depositions. Should a jury find that there was a written contract, the failure of Boss & Phelps to produce the contract would affect the credibility of Mr. Morris, who would very likely be the principal witness of Boss & Phelps at trial.

If a written contract is not produced at trial whether or not the jury finds that such a written contract did exist, the jury must determine the intent of the parties with respect to the real estate management contract by analyzing the acts and conduct of the parties. *See Richardson v. J. C. Flood Co.*, D.C.App., 190 A.2d 259 (1963). *Cf. 1901 Wyoming Avenue Co-op Ass'n v. Lee, supra* 345 A.2d at 461–62 (where confronted with an ambiguous integrated agreement, court looked to surrounding circumstances). The salient concern for this court then becomes whether any possible inference can be drawn from the conduct of the parties that would suggest that Boss & Phelps had an obligation to notify the Glekases and Mr. Bogdanoff of the approaching expiration dates, to renew the fire insurance policy, or to see that Mr. Bogdanoff renewed the policy. Viewing the disputed and undisputed facts in the light most favorable to the appellants, we are unable to say that a reasonable jury could not infer from the conduct of the parties an obligation to notify the Glekases and/or the insurance broker of approaching expiration dates or an obligation to see that the fire insur-

ance policy was renewed. A reasonable jury could infer that Boss & Phelps had some obligation with respect to the fire insurance policy and that Boss & Phelps did not satisfy its obligation.

Two facts militate toward a finding of an obligation to notify Mr. Glekas, all of the Glekases, and/or Mr. Bogdanoff. First, Boss & Phelps concedes that it kept a calendar noting the expiration date of the fire insurance and that it had a copy of the Glekases' fire insurance policy. Secondly, Mr. Morris stated that he contacted Helen Glekas and Mr. Bogdanoff prior to the expiration of the Glekases' fire insurance policy. Moreover, a reasonable jury could reasonably find that such an obligation to notify had not been satisfied by virtue of the fact that Mr. Glekas was not directly notified; that there was no written notification sent to Mr. Glekas or any of the other Glekases; that only Helen Glekas, of all the Glekases received any kind of notification; and that Mr. Bogdanoff testified that he did not receive any notification by Mr. Morris prior to the expiration of the policy.

A jury also could reasonably infer that Boss & Phelps had an obligation to renew or to see that Mr. Bogdanoff renewed the policy. The fact that Boss & Phelps kept a calendar noting the expiration date and a copy of the policy is relevant on this point. Any admissible testimony as to the prior conduct of the parties with respect to the renewal of fire insurance policies, as well as the fact of the existence of a separate agreement with Mr. Bogdanoff to renew the policy, are important facts that may be favorable to Boss & Phelps. These facts should be considered and weighed by the jury along with the other evidence.

## II. The Negligence Theory

We now briefly address that portion of the appellants' argument that sounds in negligence. We begin by noting that it is frequently appropriate to assert both breach of contract and negligence claims in an agency case. Where both claims are asserted, however, they tend to overlap.

Thus, an agent's duty is, in many circumstances, equivalent to an agent's contractual obligation and a breach of that duty equivalent to a failure to satisfy a contractual obligation. *See, e.g., Gallun v. McLaughlin Co.*, D.C.App., 321 A.2d 216, 217 n.1 and 220. *Cf. Consolidated Sun Ray, Inc., supra* 401 F.2d at 656 (whether the charge is breach of contract or negligence, the agent is bound to exercise reasonable care and skill). Yet, under some circumstances, this court has held that even if there is no contractual obligation to provide insurance an individual can still be held liable for breach of an assumed duty. *See Franklin Investment Co., Inc. v. Huffman*, D.C.App., 393 A.2d 119, 122 (1978) (although automobile installment contract required purchaser to maintain collision insurance, seller's assignee subsequently assumed the duty to provide insurance and was estopped from arguing absence of obligation). In the *Huffman* case, this court adopted Restatement (Second) of Agency § 378 (1958) which provides:

> One who, by a gratuitous promise or other conduct which he should realize will cause another reasonably to rely upon the performance of definite acts of service by him as the other's agent, causes the other to refrain from having such acts done by other available means is subject to a duty to use care to perform such service or, while other means are available, to give notice that he will not perform.

*See also Dawson v. National Bank & Trust Co.*, D.C.App., 335 A.2d 259, 261 (1975). *See generally* W. Prosser, Law of Torts § 56, at 343 (4th ed. 1971).

■ Even assuming, then, that the agency agreement in the instant case did not specify an obligation to notify any of the Glekases or the insurance broker and did not specify an obligation to see that the fire insurance was renewed, a jury could reasonably infer that Boss & Phelps breached an assumed duty owed to the Glekases. Mr. Morris and the Glekases entered into a real estate management contract. In the context of this principal-agency relationship, Mr. Morris spoke to Helen Glekas on the phone to notify her of the approaching expiration date.[8] Mr. Glekas, the agent of the Glekases who handled most business and real estate matters, was ill at the time. Mr. Morris apparently was aware of this fact, but did not send a written notification to Mr. Glekas and did not notify any of the Glekases other than Helen. Viewing these disputed and undisputed facts in light of Restatement § 378, we conclude that a jury could fairly infer that the conduct of Mr. Morris caused the Glekases reasonably to rely on Boss & Phelps to give them proper and effective notice of any approaching expiration dates or to see that their fire insurance policy was renewed and that, therefore, they justifiably refrained from renewing the policy or from communicating with Mr. Bogdanoff.

Analyzing the disputed and undisputed facts in the light most favorable to the appellants, we are unable to conclude Boss & Phelps sustained its burden of proving that there is no issue of material fact or that inferences which could be drawn from the evidence in favor of the appellants are too incredible to be accepted by reasonable minds. The appellants set forth more than merely formal allegations,[9] and we must resolve all doubts against the appellee. We reverse the grant of appellee's motion for summary judgment and remand for further proceedings.

*Reversed and remanded.*

---

8. We note that the depositions contain no testimony concerning precisely what was said during this phone conversation.

9. *Compare Reichman v. Franklin Simon Corp.*, D.C.App., 392 A.2d 9 (1978). In *Reichman*, the plaintiff fell on an icy sidewalk in front of the defendant's store and brought a negligence action. Counsel for the plaintiff, however, established no evidence that the defendant took any action with regard to the sidewalk and stated that "we have no expectancy or hope of ever showing what [the defendant] did or did not do." *Id.* at 15. The trial court observed that the plaintiff's allegations appeared to be purely formal and granted the defendant's motion for summary judgment. On appeal, the trial court's decision was affirmed.