**FARMLAND INDUSTRIES, INC., Appellant,**

v.

**GRAIN BOARD OF IRAQ, et al.**

No. 89–7127.

United States Court of Appeals, District of Columbia Circuit.

Argued May 14, 1990.

Decided June 12, 1990.

Richard M. Ziccardi, with whom Curtis E. Pew, New York City, and Jack P. Janetatos, Washington, D.C., were on the brief, for appellant.

Michael T. Shor, with whom William D. Rogers and Hadrian R. Katz, Washington, D.C., were on the brief, for appellees.

Before RUTH B. GINSBURG, SILBERMAN, and THOMAS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

This case turns on the meaning of a disputed provision in several large wheat sales contracts between appellant Farmland Industries, Inc., an American agriculture and agribusiness concern, and appellee Grain Board of Iraq, an agency of the government of Iraq that purchases wheat, barley, and rice for that country. The contracts provided for the payment to Farmland of certain charges in the event that ships assigned to transport American wheat to points in the Middle East failed to arrive in American loading ports on time. And the contracts also called for Farmland to receive incentive payments if it loaded the wheat into the ships ahead of schedule. When the shipowners refused to pay any of these charges, Farmland brought suit in the district court against them and the

Grain Board. The district court granted the Grain Board's motion for summary judgment, and Farmland challenges that order before us. We conclude that no genuine issue of material fact existed because no evidence supported Farmland's interpretation of the contract and that its tort claims are meritless. We therefore affirm the judgment of the district court.

## I.

Through a series of seven commodity sales contracts between December 1983 and September 1984, Farmland sold approximately 750,000 metric tons of hard red winter wheat to the Grain Board. The Grain Board paid for the wheat in full, an amount totalling $112 million, and those sums are not in dispute here. Since the Grain Board purchased the wheat on an "F.O.B." basis, it bore the cost and responsibility of arranging for the shipment of the cargo from the United States to ports in the Middle East. Consequently, the Grain Board entered into several maritime contracts (known as "charterparties") with three disponent shipowners[1] to transport the wheat: Compania Imacasa Maritime Corporation ("Imacasa"), Cerrigina Maritime Ltd. ("Cerrigina"), and Bulkferts, Inc. ("Bulkferts"). Imacasa carried the wheat from the first four sales contracts for December 1983 to March 1984, Cerrigina was assigned the April 1984 sales agreement, and Bulkferts shipped the wheat from the final two contracts for June and September 1984. As called for in the charterparties, the Grain Board opened letters of credit with a London bank to pay the vessel owners.

This dispute primarily involves a claim for payment of "carrying charges."[2] Carrying charges are designed to compensate a commodity seller for the storage and interest costs it incurs in the event the vessels on which the commodities are to be shipped are delayed. Five of the sale contracts provided for these charges to be paid to Farmland if the transporting ship failed to arrive in American ports on time for loading.[3] In the typical F.O.B. sales contract the buyer would be responsible for paying these charges to the seller, but here the parties sought to vary the normal commercial understanding. The carrying charge clause reads:

> In case buyer [Grain Board] fails to ship during the period [?] shall make an allowance of 20 cents per M/T [metric ton] per day to be settled directly between [disponent vessel] owners and shippers [Farmland].

We agree with the district court and the Grain Board that a word is missing in the contract—the key subject in the payment clause—between the words "period" and "shall." The Grain Board contends that the clause was intended to place sole responsibility on the disponent shipowners to pay any carrying charges (i.e., the missing word should be "owners"). Farmland, on the other hand, does not argue that the missing word is "buyer," which would impose sole liability on the Grain Board. Instead, claiming the clause is ambiguous, Farmland reads the whole clause to establish a primary obligation to pay on the vessel owners and a secondary liability on the Grain Board. Any other interpretation, it argues, would deviate too much from normal commercial practice.

By the spring of 1984, carrying charges began to mount as the shipowners experienced delays in arriving to the United States. When the carriers declined to pay the charges, Farmland told the Grain Board it would refuse to make any further shipments of wheat unless the carrying charges were paid. The letters of credit directed the bank to withhold carrying charges from the freight payments to the carriers. Soon after Farmland threatened

---

1. A "disponent" shipowner does not own the vessel but leases or otherwise obtains it for the necessary shipping period.

2. Farmland also claims that the Grain Board owes it "despatch" payments, which are fees the commodity seller receives if it loads the cargo on board the ship ahead of schedule and that the Grain Board must pay it stevedoring overtime and bank extension charges.

3. As discussed below, the carrying charge provision was waived for the first two sales contracts.

to halt the wheat shipments, the bank (presumably instructed by the Grain Board) began to deduct, from freight charges the Grain Board paid to the carriers, an amount equal to the carrying charges; the withheld sums remained in the Grain Board's account. In May 1984, the owners of Imacasa and Cerrigina contacted Farmland to arrange a meeting in Kansas City, Missouri to discuss the carrying charges. According to Farmland, after a day of negotiations a representative of the two carriers told Farmland that he had been instructed *by the Grain Board* to break off the talks.

In July, August, and September 1984, the Grain Board transferred to Farmland a total of $476,025.99, which the Grain Board claimed reflected all of the carrying charges withheld from Cerrigina. Farmland asserted, however, that it was owed additional carrying charges from the Cerrigina delay in excess of the amounts withheld by the Grain Board's issuing bank. Later in September, representatives of Imacasa, Cerrigina, Farmland, and the Grain Board met in Baghdad, Iraq to resolve the carrying charge dispute. The parties apparently reached a tentative settlement, but it soon fell apart. Thereafter, on March 19, 1985, the Grain Board transferred to Farmland $377,564.16 withheld for carrying charges traceable to Imacasa vessels' delays. And later, Farmland received an additional $75,584.85 from the Grain Board attributable to Bulkferts' carrying charges. But the Grain Board halted further transfers to Farmland when the carriers disputed the carrying charges and asserted an interest in additional withheld sums. The Grain Board explains that to avoid the possibility of having to pay the same sum to both the shipowners and Farmland, it held and continues to hold, as a stakeholder only, the remaining $383,052.33 withheld from the carriers.

Since Farmland believed that it was still owed considerably more money than was paid to it, the company filed suit against both the shipowners and the Grain Board for $1,229,714.41. The complaint alleged breach of contract, unjust enrichment, conversion, and tortious interference with contractual relations. Since the jurisdictional statute precludes jury trials against the Grain Board, which is an instrumentality of a foreign government, *see* 28 U.S.C. § 1330(a), no jury demand was made. The district court dismissed the complaint with respect to Imacasa and Bulkferts because of ineffective service of process and also dismissed the suit against Cerrigina due to the absence of personal jurisdiction. Each of the carriers are now insolvent and in liquidation proceedings, and the Grain Board has asserted that Farmland's suit is an attempt to circumvent the arbitration clause contained in the charterparties, under which Farmland is a third party beneficiary.[4] After the completion of discovery and the production of virtually all of the evidence that would have appeared in the bench trial, the Grain Board moved for summary judgment. The district court granted the motion, determining that although the carrying charge provision was ambiguous, extrinsic evidence made clear that only the disponent shipowners were liable. The court also rejected Farmland's tort claims; it held that the Grain Board was acting only as a stakeholder and therefore had not been unjustly enriched, that a conversion cause of action was not available to enforce a debt, and that the tort of interference with contractual relations does not lie when the defendant is a party to that contract.

## II.

A party is entitled to summary judgment if no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56. Material facts are those "that might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510,

---

**4.** In accordance with the arbitration clause in the charterparties, Cerrigina initiated arbitration proceedings in March 1985 against the Grain Board to recover the withheld freight payments. Cerrigina's claims have now been settled. Similar arbitration proceedings apparently are pending between Imacasa and the Grain Board.

91 L.Ed.2d 202 (1986), and a genuine dispute about material facts exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *id.*[5] Appellant contends that, with respect to its contract claims, the district court committed two errors in applying the summary judgment standard. First, it is asserted that under District of Columbia contract law Farmland was entitled to a trial on the meaning of the disputed contract provisions. Second, appellant argues that the district court improperly granted summary judgment under the Federal Rules because it either ignored or insufficiently credited inferences favorable to Farmland's interpretation of the contract.[6] We reject both of these arguments because they are based on incorrect understandings of District of Columbia contract law and federal summary judgment law.

■ Under District of Columbia law, according to appellant, a plaintiff is entitled to a trial to resolve a disputed term of a contract if it is facially ambiguous. Even the cases appellant cites in support of this dubious proposition, however, indicate that it has misread local law. When the meaning of a contract provision is facially uncertain, a court may resort to an examination of extrinsic evidence, such as statements, course of conduct, and contemporaneous correspondence, aimed at discerning the intent of the parties. *See Sundown, Inc. v. Canal Square Associates*, 390 A.2d 421, 432 (D.C.1978). To be sure, if extrinsic evidence supports more than one reasonable interpretation of the contract, local law calls for the trier of fact to resolve the dispute. But if that evidence demonstrates that only one view is reasonable—notwithstanding the facial ambiguity—the court must decide the contract interpretation question as a matter of law. *See Howard University v. Best*, 484 A.2d 958, 966–67 (D.C.1984); *Glekas v. Boss & Phelps, Inc.*, 437 A.2d 584, 587 (D.C.1981); *1901 Wyoming Avenue Cooperative Ass'n v. Lee*, 345 A.2d 456, 461 n. 8 (D.C.1975). The question for us, therefore, as it was for the district court, under both District of Columbia substantive contract law and federal summary judgment law, is whether there exists more than one reasonable interpretation of the contract.[7]

■ We agree with the district court that all of the direct evidence—the testimony of individuals involved in the negotiation and implementation of the contracts and the contemporaneous correspondence between the parties—supports the Grain Board's interpretation of the clause. Indeed, Farmland's own key personnel testified in depositions that they thought the disponent vessel owners were responsible for the carrying charges. Ray Larson, Farmland's representative in the negotiations with the Grain Board, admitted that the parties wished to depart from the nor-

5. Farmland argues that *Anderson's* reasonable jury standard applies only to actions that implicate standards of proof higher than a preponderance, such as libel claims. This assertion is simply a gross misreading of *Anderson*. *See* 477 U.S. at 252, 106 S.Ct. at 2512.

6. Appellant's argument that the district court prematurely granted summary judgment is easily rejected. Appellant contends that it would have offered additional evidence on the impact of the withholding provision of the letters of credit. Farmland never raised that objection below or asked the court to delay its ruling under Federal Rule of Civil Procedure 56(f), which grants the nonmoving party additional time for discovery. And the summary judgment motion was filed nearly a month and a half after the close of discovery.

7. The Grain Board argues and precedent indicates that the distribution of roles between the judge and jury (or in this case the judge and

judge) is determined by federal procedural law. *See, e.g., Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir.1969) ("[I]n proceedings on motions for summary judgment questions of state law will arise in determining the materiality of particular facts to the claims and defenses of the parties and the factual elements required to establish the claims or defenses of the moving party, but whether a trial is necessary is a matter of federal law.") (citation omitted); C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2712 at 591 (2d ed. 1983); *cf. Richardson v. Richardson–Merrell, Inc.*, 857 F.2d 823, 825 n. 9 (D.C.Cir.1988), *cert. denied*, —— U.S. ——, 110 S.Ct. 218, 107 L.Ed.2d 171 (1989). We note, however, that the result is the same under either D.C. or federal law, so that the choice between the two is, in this setting, academic.

mal practice of buyers paying sellers the carrying charges and that the contract made no provision for the Grain Board to pay for such charges. And the Farmland employee responsible for implementing the agreements, Randy Hayes, understood that only the carriers were responsible and testified that he sent invoices of the mounting carrying charges to the Grain Board only "as a courtesy."

What is more, the Grain Board offered numerous contemporaneous documents and correspondence demonstrating that Farmland never intended the interpretation it now asserts. For each sales contract, Farmland drafted an internal "confirmation of sale" document, which read:

> Carrying Charges/Interest 9 [sic] if vessel files within contact period, otherwise 20 [cents] per M/T [metric ton] per day *to be settled directly between [disponent ship] owners and shippers [Farmland].* (emphasis added).

And as carrying charges increased throughout 1984, Larson sent several telexes to the carriers and the Grain Board, each document indicating that Farmland thought the carriers were responsible for paying the carrying charges. Finally, the charterparties between the Grain Board and the carriers unquestionably impose the payment obligation on the carriers. For instance, the Imacasa and Bulkferts charterparties provide that vessel "[o]wners are to be fully responsible for carrying charges." The charterparties further state that "[c]arrying charges, if any, are to be settled directly between the [disponent vessel] Owners and Suppliers [Farmland]."[8] Of course, as Farmland insists, the charterparties are agreements between the Grain Board and the carriers, not Farmland. But Farmland is a third-party beneficiary, and we think the district court was correct in believing this evidence probative of the meaning of the ambiguous sales contract.

Farmland offers no direct evidence to rebut the Grain Board's powerful showing. Instead, it relies primarily on two inferences that may be drawn from the evidence, inferences Farmland contends were adequate to compel the district judge to hold a bench trial rather than dispose of the case on summary judgment. It will be recalled that in negotiating the sales contracts, Farmland waived carrying charges on the first two contracts as a "sweetener" to encourage the Grain Board. From that action, Farmland argues the trier of fact could infer that both parties understood that the Grain Board would be liable for carrying charges—in the absence of such a waiver. The difficulty with this argument is that the Grain Board produced evidence that the carrying charges on the first two contracts were to be paid *to the Grain Board.* In other words, Farmland agreed that the buyer, Grain Board, rather than the seller, Farmland, would be compensated if the shipping companies delayed in picking up the cargo. There is nothing, of course, irrational in this arrangement; the buyer as well as the seller suffers costs of delay (albeit different costs), and the arrangement provides a continued spur to the carriers not to delay—which a complete waiver of carrying charges would not.

Perhaps because of these considerations, by the time of oral argument appellant rested virtually its entire case on the inference that can be drawn from the provision in the letters of credit directing the issuing bank to withhold carrying charges from the sums that were to be paid on the Grain Board's account to the carriers. To be fair, that arrangement at least suggests that the Grain Board wished to protect itself against a claim for liability, which, in turn, might suggest that there were objective reasons for such a claim. Of course, one could also infer that the Grain Board had an interest—without regard to any liability on its part—in ensuring that its seller was compensated by the carriers for carrying charges. But as Farmland correctly argues, in a summary judgment motion the district court must confer on the nonmov-

**8.** The charterparty with Cerrigina differs from the others in that the agreement requires Cerrigina to pay the Grain Board any carrying charges. According to the Grain Board, this provision only served as a payment mechanism because the Grain Board would transfer to Farmland any carrying charges it received from Cerrigina.

ing party the benefit of any reasonable inferences. *See, e.g., Goodrich v. International Bhd. of Elec. Workers,* 712 F.2d 1488, 1494–95 (D.C.Cir.1983).

The Grain Board urges us to hold, as did the district court, that such inferential evidence cannot as a matter of law create a material issue of fact when juxtaposed against the direct and uncontradicted evidence it has brought to court. There is, we note, an element of artificiality about this issue (indeed this appeal), because appellant did not and cannot ask for a jury to decide this question.[9] The district judge has examined virtually all the evidence it would have before it at a bench trial. Appellant's chances, if there were a remand, are under these circumstances hardly bright. Nevertheless, we must decide this case just as if there were a jury available, for the law of summary judgment does not vary with this circumstance. And we are not certain that the Grain Board's proposition—that evidence susceptible to more than one inference cannot create a material issue of fact if juxtaposed against direct evidence that rebuts the inference the non-moving party would have the court draw—is necessarily correct in all cases. We need not accept that proposition here, however, because Farmland's suggested interpretation of the contract is without adequate support even with the benefit of the inference it would draw.

Farmland does not argue that the missing word in the carrying charge clause is "buyer"—*i.e.,* that the parties intended the Grain Board to be solely responsible. Instead, appellant postulates a rather complex contractual arrangement, without benefit of any contract language or extrinsic evidence, to the effect that the carriers (the owners) had a primary duty to pay the carrying charges, but the Grain Board remained liable as something of a guarantor in the event the vessel owners did not pay. That contractual arrangement seems supported only by Farmland's *post hoc* desires in light of the carriers' bankruptcy. Even if the withholding provision in the letters of credit were to suggest that the Grain Board thought it bore some liability, one could not infer without other evidence—and there is none—that the parties intended the construction of the clause that Farmland proposes. We therefore think the district court was correct; since no reasonable trier of fact could reach appellant's contract interpretation, even accepting the inference it argues, summary judgment on this issue was appropriate.[10]

### III.

Farmland, it will be recalled, also alleged tortious interference with contractual relations, conversion, and unjust enrichment. We agree with the district court that the Grain Board was entitled to judgment as a matter of law on each of these claims. Farmland concedes that the tort of interference with contractual relations does not lie when the defendant itself is a party to the contract. *See Donohoe v. Watt,* 546 F.Supp. 753, 757 (D.D.C.1982), *aff'd,* 713 F.2d 864 (D.C.Cir.1983); W. KEETON, PROSSER AND KEETON ON THE LAW OF TORTS § 129 at 990 (5th ed.1984). According to appellant, however, if we decide that the Grain Board's interpretation of the sales contracts is correct, then Farmland must pre-

9. *See* 28 U.S.C. § 1330(a).

10. Extrinsic evidence similarly supports the Grain Board's view that the carriers alone owe Farmland $188,672 in unpaid "despatch" charges. The sales contracts do not indicate who must pay despatch fees, the Grain Board or the carriers. Five of the sales contracts simply provide for such payments. The remaining two contracts, however, explicitly refer to the charterparties, and the charterparties clearly state that despatch payments are "to be settled directly between [disponent vessel] owners and suppliers [Farmland]." Moreover, Farmland's internal confirmations of sales for each of the February–September 1984 sales contracts provide for "demurrage/despatch as per C/P [charterparty]."

Farmland's final contract claim for stevedoring overtime and fees the bank charged for the extension of its letter of credit is directed only at Bulkferts under the charterparty. The terms of the charterparty plainly require the carrier to pay these fees rather than the Grain Board. The charterparty states that "any overtime expenses at the loading port are for the Owner's [Bulkferts'] account." The agreement further makes clear that "all bank charges outside Iraq are for the Owners' [Bulkferts'] account."

vail on this tort claim because no contractual relationship would have existed between the two—at least on the carrying charge issue. But when we decide that the Grain Board had no contractual obligation to pay the disputed shipping-related charges, we are not concluding that no contract at all existed between the parties. Adoption of the Grain Board's view simply means that the appellant and appellee agreed that Farmland would receive certain fees from a third party; the law of contract, not tort, still governs their rights and duties respecting the sales contract and therefore the tortious interference cause of action is not available. It is possible that the Grain Board's alleged instructions to the owners' representative to break off the Kansas City negotiations breached an implied duty of good faith that the Grain Board owed to Farmland, under either or both the sales contract and the charterparty, but this claim, if it were made at all, was certainly not raised on appeal.

 The unjust enrichment and conversion claims suffer from the common defect that the Grain Board is only holding the money until it is determined in other proceedings whether the shipowners or Farmland are entitled to the withheld sums. We take the Grain Board's representation in this court to estop them from asserting otherwise in another proceeding, and also as a good faith representation that in the event the shipowners' claims were, for any reason, no longer viable, it would pay over the withheld sums to Farmland.

\* \* \* \* \* \*

Because we believe that the Grain Board's interpretation of the contract was the only reasonable one advanced by the parties and that Farmland did not allege any cognizable torts against the Grain Board, we affirm the granting of summary judgment by the district court.

*It is so ordered.*