Suzanne McCOY, et al., Appellants,

v.

QUADRANGLE DEVELOPMENT COR-
PORATION, et al., Appellees.

No. 82–1444.

District of Columbia Court of Appeals.

Argued Oct. 5, 1983.

Decided Dec. 29, 1983.

William E. Nelson, with whom Frederick B. Abramson and Sherilee S. Nelson, Washington, D.C., were on briefs, for appellants.

William J. Carter, with whom Dwight D. Murray, Edgar T. Bellinger and David R. Rivero, Washington, D.C., were on joint brief, for appellee Salus Corp.

Dennis A. Davison, Washington, D.C., with whom Brian C. Shevlin and Cathy G. Kruvant, Arlington, Va., were on joint brief, for appellees Quadrangle Development Corp., Square Realty, Inc., and Gladstone Associates, Inc.

David A. Levin and W. Scott Sonntag, Upper Marlboro, Md., were on joint brief, for appellee Otis Elevator.

Before TERRY and ROGERS, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

Appellants-plaintiffs, Suzanne McCoy and Burton B. Hanbury, Jr., co-administrators of the estate of Craig Stewart McCoy, sought pursuant to the District of Columbia Wrongful Death Act, D.C.Code §§ 16–2701 to 2703 (1981), and the District of Columbia Survival Act, D.C.Code §§ 12–101 to 104 (1981), to recover damages for his alleged wrongful death. Following extensive pretrial discovery, appellees-defendants [1] joint-

---

1. Defendants below were Quadrangle Development Corporation, Square Realty, Inc., Glad-stone Associates, Inc. (owners and/or develop-

ly moved for a summary judgment on the grounds, among others, that appellants had failed to state a cause of action upon which relief could be granted. After extensive additional briefing, summary judgment was entered in favor of appellees.[2] This appeal followed.

Appellants challenge the action of the trial court. Specifically, they argue that there were genuine issues of material fact sufficient to require the submission of the case to a jury. The thrust of appellees' response is that appellants failed to present sufficient proof to raise a jury question on the issue of the proximate cause of decedent's death. We reverse and remand.

██ The undisputed facts surrounding decedent's death, viewed in a light most favorable to appellants,[3] are as follows. On the evening of April 27, 1979, Craig Stewart McCoy attended a dinner party with members of his law firm at a restaurant across the street from the firm's offices at 1919 Pennsylvania Avenue, Northwest. Although construction of the new office building had not been completed, decedent's law firm had taken up occupancy on the second floor.[4] Sometime around midnight when the party began to break up, McCoy returned to his firm's office building. According to the records of the Kastle Security Card System, which was in operation that night, the decedent entered the premises at approximately 12:15 a.m., and as far as the record shows, he was the only person on the premises at that time. The following morning, April 28, 1979, workmen entered the premises to repair elevator car No. 2, which was found in a stationary position between the mezzanine level and the floor above. Later that same afternoon, the body of decedent was discovered at the bottom of elevator shaft No. 2.[5]

In their complaint, appellants alleged that the fatal injuries suffered by decedent were the result of appellees' negligence. In particular, appellants alleged that appellees Salus Corporation, Quadrangle Development Corporation, Square Realty, Inc., and Gladstone Associates, Inc. breached their duty owed to decedent and to other invitees by maintaining the building in a hazardous condition and by failing to render the premises, specifically the elevators, safe and usable. Appellants also alleged that appellee Otis Elevator Company breached its duty owed to decedent by designing and placing in commercial use an elevator containing neither a telephone, nor an alarm which sounds outside the premises, in express violation of the District of Columbia Elevator Code, 5E–1 DCRR § 211.1 (1977). Furthermore, appellant alleged as negligence Otis' failure to prevent construction debris and dust from entering the control mechanism of elevator No. 2.

██ A summary judgment is properly granted only when the pleadings and other materials on file demonstrate that no genuine issue of material fact remains for trial, and that the movant is entitled to judgment as a matter of law. Super.Ct.Civ.R. 56(c); *Burch v. Amsterdam Corp.,* 366 A.2d 1079, 1083–84 (D.C.1976). This strict standard is imposed because summary judgment is considered to be an extreme remedy which should be granted only where it is "quite clear what the truth is." *Sartor v. Arkan-*

---

ers), Salus Corporation (general contractor), and Otis Elevator Company.

2. The court was apparently of the view that based upon the record made during the lengthy discovery proceedings, appellants could not, under any theory, establish negligence.

3. The party opposing a summary judgment is entitled to the benefit of all favorable inferences which may be drawn from the evidentiary materials. *Adickes v. S.H. Kress & Co.,* 398

U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Truitt v. Miller,* 407 A.2d 1073, 1077 (D.C.1979).

4. An occupancy permit had been issued for the parking garage in the basement and one office on the first floor. No such permit had been issued for the offices of decedent's firm.

5. Upon investigation it was determined that death was caused by multiple fractures resulting from a fall down the elevator shaft.

*sas Natural Gas Corp.,* 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944).

■ To be successful on a motion for summary judgment, the moving party has the burden to demonstrate the absence of any material factual issue. Any doubt as to whether or not an issue of fact has been raised is sufficient to preclude a grant of summary judgment. *Washington Post Co. v. Keogh,* 125 U.S.App.D.C. 32, 34, 365 F.2d 965, 967 (1966), *cert. denied,* 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967). In this connection, the party opposing the motion need show only that there is sufficient evidence supporting the claimed factual issue to require a jury to resolve the parties' differing versions of the truth. *Franklin Investment Co., Inc. v. Huffman,* 393 A.2d 119, 122 (D.C.1978).

■ In reviewing the trial court's summary judgment ruling, it is not the function of this court to resolve factual issues, but rather merely to determine whether any relevant factual issues exist. *International Underwriters, Inc. v. Boyle,* 365 A.2d 779, 782 (D.C.1976). To determine whether an issue of fact existed, our examination must take into account the pleadings, depositions, admissions on file and affidavits. *Burleson v. Burleson,* 277 A.2d 647, 649 (D.C.1971).[6] We have reviewed the trial court's ruling and conclude that the various pleadings, interrogatories, and depositions before us raise genuine questions of fact which should have been submitted to the jury.

■ Appellants alleged that appellees' negligence caused decedent to either fall down an open elevator shaft, or to slip and fall while attempting to escape from an inoperable elevator cab. Appellees, in response, argued that the record discloses no evidence relating decedent's injuries to any alleged negligence on their part. They insisted that since the jury could have only speculated as to whether decedent's death was proximately caused by a malfunctioning of the elevator, a summary judgment was warranted. It is basic law that the proximate cause of an injury is ordinarily a question of fact for the jury. Only if there were absolutely no facts or circumstances from which a jury could reasonably have found that appellees were negligent and that such negligence was the proximate cause of the injury, would the question have been one for the court. But if, as here, the facts are such as to cause reasonable men to differ, then the question is clearly one for the determination of the jury. *Munsey v. Webb,* 37 App.D.C. 185, 188 (1911), *aff'd,* 231 U.S. 150, 34 S.Ct. 44, 58 L.Ed. 162 (1913). Counsel for appellees argue that the trial court was correct in granting a summary judgment, as there were no facts or circumstances from which a jury could have reasonably concluded that decedent's injuries were in any way caused by a defective elevator cab. They claim that decedent's death could have been caused by any one of a number of reasons—his own negligence, homicide or suicide. Thus, appellees argue, the proximate cause of the accident would necessarily have been a matter of conjecture and speculation. We disagree.

■ The fact that no one knew with any degree of certainty how decedent got to the bottom of the elevator shaft was not fatal to appellants' case. Where there are no eyewitnesses to an accident and the cause thereof cannot be established by direct proof, then the facts which can be established circumstantially may justify an inference by the jury that negligent conditions produced the injury.[7] In such a case,

---

**6.** Super.Ct.Civ.R. 56(c) provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

**7.** In the instant case, appellants invoke the doctrine of *res ipsa loquitur* to create the inference that decedent's injuries were proximately caused by appellees' negligence. *Res ipsa loquitur* permits a jury to infer negligence from the mere occurrence of an accident. The happening itself affords "reasonable evidence" that the accident arose from a lack of due care. *Quin v. George Washington University,* 407

a jury is not left in the "domain of speculation, but they have circumstances upon which, as reasonable minds, they may ground their conclusions." *Parker v. Seaboard Coastline Railroad,* 573 F.2d 1004, 1009 (8th Cir.1978), *quoting St. Louis I.M. & S. Ry. Co. v. Hempfling,* 107 Ark. 476, 485, 156 S.W. 171, 174 (1913). Consequently, we hold that there was a reasonable showing by appellants that appellees were negligent and that such negligence could have been the proximate cause of decedent's death. Since its installation, elevator No. 2 had a chronic history of problems.[8] In fact, just a few days prior to decedent's death, elevator No. 2 was shut down because its cab had not been leveling properly. An Otis repairman, unable to fix the elevator, referred the problem to Otis' service department. There is no indication, however, that elevator No. 2 had ever been adequately repaired by the Otis service department.

Furthermore, two individuals testified on depositions that they had experienced trouble with elevator No. 2 the very same evening of decedent's death. Brenda Vaccaro, a secretary employed by decedent's law firm, testified that on her way home on the evening in question, she entered elevator No. 2. Before reaching the ground floor, the cab stopped and started a number of times and moved up and down the shaft at varying rates of speed. William Silverman, an associate with decedent's law firm, testified that later that same evening, just thirty minutes before the decedent entered the building, he had also experienced similar difficulties with the same elevator car.

▆▆▆ Appellees claim that, notwithstanding the fact that elevator No. 2 had been malfunctioning on the evening of dece-

dent's death, appellants offered no evidence which would tend to establish that he had even been on elevator No. 2 that night. There is no merit to this argument. The record discloses evidence that decedent entered the building at 12:15 a.m. on April 28, 1979. There is no record of anyone else entering the building between that time and the following morning when workmen discovered cab No. 2 stuck between floors above the mezzanine level. Mr. Silverman, the last person of record in the building before the decedent entered, testified on deposition that he left elevator car No. 2 at the third floor before leaving the premises. Consequently, a reasonable jury could have concluded that since decedent was the only individual in the building after Silverman, and the elevator was no longer on the third floor when workmen entered the building the next morning, there were sufficient facts presented from which a reasonable person could have inferred that decedent had been in cab No. 2 on the evening in question.

▆▆▆ Moreover, when the repairmen entered the building the following morning, the alarm bell of elevator No. 2 was ringing and the doors to the cab were open. Expert testimony in depositions revealed that the alarm bell could only be activated from inside the cab. Likewise, the doors of the cab could be opened only from the inside. Again, since decedent was the only person on the premises between the time Silverman left and the construction workers entered the following morning, it would be reasonable to conclude that decedent had activated the alarm and opened the cab doors from the inside of the cab.[9]

A.2d 580, 585 (D.C.1979). This doctrine permits plaintiffs to establish a *prima facie* negligence case based on an inference that these types of accidents do not usually occur unless there has been negligence. Thus, to force appellants in this case to allege just how and by what means decedent's accident occurred "would do violence to the principal of *res ipsa loquitur.*" *Id.*

8. Testimony from a variety of depositions reveal that virtually all of the tenants in the

building at one time experienced some difficulty with the operation of the elevator including: doors opening before the cab stopped, elevators going to the wrong floors, cars not responding when floor buttons were pushed, and skipping floors.

9. Additionally, appellees claim that there was no evidence presented to show that McCoy's death was, in fact, caused by the fall. Appellees claim that death could have resulted from a blow to the head, rather than injuries sus-

Appellees' counsel offered alternative theories to explain how decedent got to the bottom of the elevator shaft, and doubtless, a jury of reasonable persons could have accepted these explanations as the truth. However, we hold that there is no evidence presented which would have compelled a jury to draw such a conclusion. Appellants are not required to eliminate with complete certainty every other possible cause or inference. They need only introduce evidence with sufficient probative force to support an inference that decedent's accident was "probably caused" by appellees' want of due care. None of the theories proposed by appellees were so compelling that this court must say that reasonable minds could only draw one conclusion.

Thus, viewing the evidence in the light most favorable to appellants, and giving it the full effect of every legitimate inference therefrom, we are satisfied that jury issues existed and that it was error to grant a summary motion. For the foregoing reason, we reverse and remand for trial.[10]

*Reversed and remanded.*

---

tained in a fall. Appellants offer a death certificate, an autopsy report, an OSHA accident report, and a D.C. Elevator Inspector's report, which all conclude that death was caused by multiple fractures sustained from a fall. Since there is a legitimate dispute as to the cause of the accident, we conclude that it was an appropriate question for the jury. The police investigation report also contained facts which were consistent with a fall down an elevator shaft: a clump of what appeared to be McCoy's hair was found on the center beam of the shaft and the dust next to it was disturbed; a significant amount of dust was found on the seat of McCoy's pants; and the dust and scuff marks on the "counterweight shield" indicated that his body hit the shield on the way down to the pit floor.

10. Appellants also urge this court to decide whether an investigative report prepared by a private firm employed by appellees' counsel was protected from discovery by the attorney work-product rule. *See* D.C.Super.Ct.Civ.R. 26(b). We need not reach that question.