**John C. REYNOLDS, Appellant,**

v.

**GATEWAY GEORGETOWN CONDO-MINIUM ASSOCIATION, INC., Appellees.**

No. 83–988.

District of Columbia Court of Appeals.

Argued April 25, 1984.

Decided Oct. 24, 1984.

---

John C. Reynolds, pro se. Dwight D. Murray and A. Michael Frucci, Washington, D.C., were on the brief, for appellant.

David Florin, Washington, D.C., with whom Walter J. Smith, Jr., and D. Debra Rubin, Washington, D.C., were on the brief, for appellees.

Before MACK, FERREN and PRYOR, Associate Judges.

**PER CURIAM:**

In this case the trial court granted summary judgment to appellees Gateway Georgetown Condominium Association and Thomas Hollenbach, its former president.[1] Appellant John Reynolds contends, *inter alia*, that genuine issues of material fact surrounding his complaint remain outstanding, and that the trial court committed error in granting the Association's motion. A review of the record reveals partial support for appellant's position; we therefore reverse in part and remand the case to the trial court.

Appellant purchased two condominium units in 1973.[2] In 1978, after he had moved to New York and rented the units to various tenants, the Association's Board of Directors[3] notified appellant that he owed certain fees. Appellant disputed the Association's assessment and withheld payment. Similarly, when the Association instituted a "move-in/move-out fee" and levied it against several of his tenants, appellant, who asserted that the assessment was illegal,[4] deducted the amount levied from his monthly maintenance fee after reimbursing his tenants.

In September 1981, the Association's attorneys contacted appellant and alleged that he owed several thousand dollars to the Association. The sum included attorneys' fees assessed pursuant to the Bylaws, *supra* note 3, Article IX, § 4. Appellant, citing unsatisfactory maintenance and the alleged illegality of certain assessments, refused to pay. However, in October 1981, appellant sent a $903.91 check to

---

1. This opinion will refer to both appellees as the "Association."

2. Appellant owns one unit by himself. The other he owns jointly with his father and brother.

3. All unit owners, such as appellant, are members of the Association. Members elect the Board of Directors, who may be removed by majority vote prior to the expiration of their terms without cause. *See* Bylaws of Gateway Georgetown Condominium Association, Inc. (hereinafter cited as "Bylaws"), Article V, § 7.

4. The Association's proposal for instituting the moving fee was rejected by the membership as an amendment to the Bylaws, *supra* note 3. Subsequently, however, the fee was adopted by a resolution of the Board of Directors. The ostensible purpose for the fee is to help defray the cost of damage to common areas inevitably caused when tenants of unit owners move in or out of their units.

the Association, which purportedly represented the debt exclusive of disputed attorneys' fees. The Association promptly returned appellant's check with an accompanying letter stating that the amount forwarded was insufficient to settle the dispute, and that appellant should consider "all previous offers of settlement" withdrawn.

Appellant received notification in March 1982, that the Association, by a vote of the Board of Directors, had accelerated his monthly installments and planned to foreclose upon his property in thirty-one days [5] due to an outstanding balance of over $9,000.[6] Appellant sought a temporary restraining order and preliminary injunction in April, disputing the amount of attorneys' fees allegedly due, and claiming that he had paid the amount—$903.91—otherwise owed. Appellant also filed suit against the Association, claiming *inter alia* that his "properly tendered" payment of $903.91, and subsequent payments, were unjustifi-

ably returned to him, and that the Association, by returning the payments, breached a settlement agreement previously agreed to by the parties.[7]

Additional negotiations commenced between the parties, and an undated "Stipulation" was eventually executed by attorneys for both sides. The Stipulation provided that the Association would comply with an order enjoining any foreclosure action if appellant paid $2,739.98 in overdue fees, continued to pay his monthly maintenance fees, and posted a bond to secure any disputed claims. The Stipulation also allowed appellant to file an amended complaint before May 11, 1982.

Appellant's amended complaint was filed on May 10.[8] In his amended complaint, appellant repeated his allegation that the Association's return of his $903.91, and other payments, violated the terms of an agreement reached between the parties.[9]

---

5. Acceleration of appellant's monthly installments is permitted by Bylaws, *supra* note 3, Article IX, § 6; *see also id.* Article IX, § 4 (unpaid assessments constitute continuing lien on property). The notice of foreclosure is provided by D.C.Code § 45–1853(c) (1981), formerly codified as *id.* § 5–1253(c) (1978 Supp.). Appellant's amended complaint, which was before the trial court, challenged the statute's constitutionality as it provided the Association with the power to sell appellant's units prior to a hearing in which the amount actually owed could be determined. The power-of-sale portion of § 45–1853(c) provides:

> A lien for assessments against a condominium unit may be enforced against such condominium unit by a power of sale in favor of the unit owners' association if assessments are past due, unless the condominium instruments provide otherwise. A unit owner shall have the right to cure any default in payment of assessments at any time prior to the foreclosure sale by tendering payment in full of past due assessments, plus any late charges and interest due thereon and reasonable attorney's fees and costs incurred in connection with the enforcement of the lien for such assessments. Such power of sale may be exercised by the executive organ on behalf of the unit owners' association, and the executive organ shall have the authority to deed a unit sold at a foreclosure sale by the unit owners' association to the purchaser at such sale.

Appellant's constitutional claim is that this section, as applied in his case, constituted a deprivation of property without due process of law. *See Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). We leave this question unresolved in light of our disposition of this case.

6. The sum apparently included attorneys' fees.

7. The complaint also alleged that the move-in/move-out fee improperly interfered with the contractual relationships between appellant and his tenants, that the foreclosure action amounted to a breach of fiduciary duty and was unconstitutional, and that the Association breached its duty to maintain common areas by failing to repair water damage to appellant's units.

8. Apparently, the amended complaint was filed pursuant to the Stipulation. Also pursuant to the Stipulation, appellant sent checks totaling $2,739.98 to the Association. These checks, and others sent by appellant, were later returned uncashed.

9. In a notarized interrogatory, appellant subsequently stated that the agreement concerned delinquent condominium fees, interest, and costs. The agreement did not encompass settlement of the attorneys' fees claim by the Association. Appellant stated in the interrogatory that no agreement was reached concerning attorneys' fees.

In its answer, the Association pleaded that, although a settlement and accord had been reached, appellant "failed to abide by the terms of the settlement agreement."[10]

In July 1982, appellant received a second notice of the Association's intent to foreclose. Appellant's motion to restrain this action (like his previous motion) was denied. Thus threatened with immediate foreclosure and sale of his property, appellant paid $9,778.72 to the Association as demanded.

After limited discovery, the Association moved in April 1983 for summary judgment on appellant's amended complaint. In its argument supporting the motion, the Association argued, *inter alia*, that appellant had not proven the existence of an agreement between the parties that the offered $903.91 was a complete settlement of outstanding claims. The Association averred that such an agreement did not exist and that, therefore, no action for breach could be maintained. In his opposition to the Association's motion, appellant, citing his sworn interrogatories,[11] alleged facts supporting his claim that a settlement agreement had been reached with the Association's attorneys. Notwithstanding this factual dispute, the trial court, without opinion, granted the Association's motion and dismissed appellant's entire complaint with prejudice. We believe that this was error.

The conditions necessary to support an award of summary judgment are clear. Super.Ct.Civ.R. 56(c) provides that judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

■ We have recently observed that "summary judgment is considered to be an extreme remedy which should be granted only where it is 'quite clear what the truth is.'" *McCoy v. Quadrangle Development Corp.*, 470 A.2d 1256, 1258 (D.C.1983) (quoting *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944)). The party seeking judgment must establish the absence of genuine issues of material fact. *Id.* at 1259; *Nader v. deToledano*, 408 A.2d 31, 42 (D.C.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). In order to defeat the motion, the opponent need only offer evidence that would *"permit* the factfinder to hold for the nonmoving party under the appropriate burden of proof[.]" *Id.* (Emphasis in original). If the record is unclear as to whether a genuine issue of material fact is presented, the trial court must deny the motion. *See McCoy v. Quadrangle Development Corp., supra,* 470 A.2d at 1259; *Turner v. American Motors General Corp.*, 392 A.2d 1005, 1006 (D.C.1978).

■ In ruling upon the propriety of the trial court's decision, this court conducts its own independent examination of the entire record. *Phenix-Georgetown, Inc. v. Tompkins Co.*, 477 A.2d 215, 221 (D.C.1984). We do not attempt to resolve any perceived extant issues of material fact; rather, we merely scrutinize the record for such issues. *Nader v. deToledano, supra,* 408 A.2d at 42. Of course, we must give appellant "the benefit of all favorable inferences

---

**10.** In a verified affidavit later filed with the trial court, appellant Hollenbach stated that appellant "was delinquent in his payment of assessments on his condominium beginning as early as February 1981." No mention was made of appellant's claim that there had been a settlement agreement reached with regard to these unit assessments, nor was the issue of attorneys' fees mentioned. An affidavit filed by the Association's attorney, David Boccio, asserted, con-

trary to appellant's claim, that a settlement had been reached with regard to "costs and attorneys' fees incurred in collecting the account delinquency." The attorney asserted that appellant breached the settlement agreement "by making a tender less than the sum agreed upon in settlement." *Compare supra* note 9.

**11.** *See supra* note 9 and accompanying text.

that can be drawn from the record." *Phenix-Georgetown, Inc. v. Tompkins Co., supra,* 477 A.2d at 221.

Given the "Stipulation" which the parties executed, and the contrary assertions as to monies owed and paid by the appellant, *see supra* note 10, we conclude as to the question of a settlement and accord between the parties, that there are genuine issues of material fact precluding summary judgment on appellant's breach of contract and "fiduciary duty" claims.[12] *See Barrett v. Air Brakes & Controls, Inc.,* 130 A.2d 310, 311 (D.C.1957) (existence *vel non* of settlement agreement was question of fact); *cf. Boks v. Charles E. Smith Management, Inc.,* 453 A.2d 113, 116–17 (D.C.1982) (circumstances surrounding drafting of praecipe for dismissal presented issues of material fact precluding summary judgment). Whether a settlement agreement was effective and binding, what its terms encompassed, and whether appellant performed according to its terms are unresolved issues of material fact that must be resolved on remand.

We do not answer appellant's contention that D.C.Code § 45–1853(c) is unconstitutional under the Due Process Clause of the Fifth Amendment. *See supra* note 5. For, if after resolution of questions involving the existence and scope of the settlement agreement, it is determined that the Association had no contractual right to foreclose upon appellant's property, such a ruling would be premature. As to the remaining counts of appellant's amended complaint, we first observed that no genuine issues of material fact are outstanding. Next, we state our agreement with the Association that the Bylaws, *supra* note 3, Article VIII, § 7, preempt appellant's negligence claim, and that *id.* Article V, §§ 3(a) and (d), allow the Board of Directors to impose the move-in/move-out fee despite the fact that the membership opposed its addition as an amendment to the Bylaws. We affirm, therefore, the grant of summary judgment on counts I and IV.[13]

*Reversed in part and remanded.*

---

**12.** Counts II and III of the amended complaint each are predicated upon the existence of a settlement agreement as contended by appellant.

**13.** Appellant contends for the first time on appeal that the existence of the "Stipulation," signed by both parties, operates to prevent summary judgment on his complaint. Aside from our analysis offered *supra,* we do not agree. Assuming that appellant is correct that the Stipulation was in effect and binding on the parties, its terms simply provide for his filing of an amended complaint. This he did. It was this amended complaint that was ruled upon by the trial court and this court. As to the amended complaint, therefore, we have accepted appellant's argument that the Stipulation is in effect.

We add, however, that this opinion expresses no view concerning whether the Stipulation is binding as to its $2,739.98 lump sum and subsequent maintenance payments provisions. If appellant believes that these provisions were binding, and that by his subsequent $9,778.72 payment he was overcharged in violation of the contract, he may choose to sue for breach of the Stipulation. Again, we express no view on this matter, having limited our decision to the four corners of the amended complaint before the trial court.