**Nathaniel H. SPEIGHTS, Appellant,**

v.

**800 WATER STREET, INC., Appellee.**

**No. 08–CV–1195.**

District of Columbia Court of Appeals.

Submitted May 5, 2010.

Decided Sept. 16, 2010.

---

Keith W. Watters, Washington, DC, was on the brief for appellant.

Simon M. Osnos, Falls Church, VA, was on the brief for appellee.

Before REID and KRAMER, Associate Judges, and KING, Senior Judge.

KING, Senior Judge:

In this negligence action to recover damages for an injury suffered during a fall, Nathaniel Speights appeals from the trial court's entry of judgment as a matter of law for appellee 800 Water Street, Inc., which owns the H2O Restaurant where the injury occurred. Speights contends the trial court erroneously concluded that the jury would have to speculate in order to find that the restaurant's negligence caused the injury Speights sustained. He also argues the trial court improperly ruled certain evidence was inadmissible hearsay and that the trial court improperly excluded Speights' proffered expert witness. Because we agree with Speights that a reasonable jury could find, without speculating, that a restaurant employee negligently caused his injury, we hold that the trial court erred in finding in 800 Water Street's favor as a matter of law. Accordingly, we reverse and remand.

## I. The Trial

At a jury trial in the Superior Court, Speights testified about the circumstances leading to his injury. On the evening of March 5, 2004, he was a customer in the restaurant H2O, when, around 6:30 or 7:00, he attempted to exit the restaurant through its vestibule.[1] He described the vestibule as consisting of two sets of double doors, one leading from the exterior of the restaurant into the vestibule, and the second leading from the vestibule into the dining area of the restaurant. The doors leading from the vestibule into the dining area had tinted panels of glass which could not be seen through, and the lighting in that area of the restaurant was dim.[2]

As Speights was heading towards the first set of double doors, a group of people coming through the doorway in the opposite direction held the door for him. Shortly after Speights passed through the doorway, he felt the door hit him in the back with "a lot of force," which caused him to fall and land awkwardly on his right arm. Immediately after Speights fell, a young man fell on top of him. This young man had been moving in the same direction as Speights, from the dining area into the vestibule. Speights noticed he was wearing a black and white waiter's uniform and carrying a serving tray. He helped Speights up and directed him to a restaurant manager. Other than the man in the waiter's uniform, there was no testimony by Speights regarding the presence of anyone else in the area of the doorway after his fall.

During Speights' direct examination, his counsel asked, with respect to the man in the waiter's uniform, "Did he say anything to you after he fell?" The defense objected on hearsay grounds, and the trial court sustained the objection. Speights' counsel did not present any argument regarding the objection. Later, the court *sua sponte* questioned Speights, asking how he knew it was the waiter who pushed the door into him. Speights responded, "I knew it because ... after he landed on me, he said, 'I'm sorry. I didn't see you.'" The court admonished Speights, saying, "Don't tell me what he said. You know better. I know you do."[3] Again, Speights' counsel

---

1. The parties stipulated that appellee owned the restaurant and that on the date in question, Speights had been an invitee.

2. Speights also presented photographs of the doors and the vestibule area.

3. Speights had testified that he was a trial lawyer and had been in private practice doing civil and criminal trial work for twenty-two years.

made no attempt to challenge the court's ruling that the statement was inadmissible. Speights contends before us, however, that the trial judge erred in excluding that testimony.

Shortly after the fall, Speights felt his arm go numb and was having trouble lifting it. He went immediately to a hospital emergency room, where it was determined that his arm was broken and required surgery. Speights described in detail his treatment and medical bills, which totaled approximately $15,000, including medication and hospital visits. He described the pain from his injury as initially being "excruciating" and said at the time of trial—four years after he fell—that he still periodically felt pain and required medication to control it.

In addition to his own testimony, Speights offered the testimony of Faik Tugberk, an expert in the fields of architecture and planning. Based on a deposition taken prior to trial, Tugberk would have testified that the vestibule and its sets of doors were "not planned in a safe manner." He highlighted two aspects of the doors that he deemed unsafe, the tinted glass on the window panels and the doors' ability to open both ways, instead of just toward the exit. He based his conclusions on his experience as an architect and his familiarity with the International Building Code 2000, which he said had been adopted by many jurisdictions, including the District of Columbia, Virginia, and Maryland.

As his counsel articulated before the trial court, Speights had essentially two theories of negligence: first, that the vestibule area was designed in an inherently unsafe manner; and second, that the restaurant's employee failed to exercise proper care when he opened the door. After reviewing the expert's proffered testimony, the trial court ruled the expert would not be permitted to testify. The court reasoned that the expert had failed to articulate a national standard of care applicable to the architecture and planning of the restaurant. This ruling effectively eliminated Speights' "unsafe design" theory. That ruling by the trial judge is also challenged before us in this appeal.

After Speights presented his case-in-chief, the defense moved for judgment as a matter of law, arguing, inter alia, that because Speights had not actually seen the waiter push the door open, there was "no proof that any employee of H2O opened the door onto Mr. Speights," and that "it would merely be speculation for the jury to infer that." Speights' counsel argued that the evidence, taken together with the fair inferences the jury could make in Speights' favor, was sufficient to show that it was indeed the waiter who opened the door. The trial court granted the motion, concluding that in order to find in Speights' favor, the jury would have to speculate as to the exact cause of the door hitting Speights.

## II. Judgment as a Matter of Law

■ We review the granting or denial of a motion for a judgment as a matter of law *de novo*, applying the same legal standards as the trial court in ruling on the motion in the first instance. *NCRIC, Inc. v. Columbia Hospital for Women Med. Ctr., Inc.*, 957 A.2d 890, 902 (D.C.2008). "When the evidence and its attendant inferences, viewed in the light most favorable to the non-moving party, support but one reasonable conclusion favorable to the moving party, the trial court must grant [the motion]; otherwise, however, the motion must be denied." *Urban Dev. Solutions, LLC v. District of Columbia*, 992 A.2d 1255, 1266 (D.C.2010) (citation omitted); *see also* Super. Ct. Civ. R. 50(a)(1). "As long as there is some evidence from

which jurors could find that the [non-moving] party has met its burden, a trial judge must not grant a directed verdict." *Abebe v. Benitez*, 667 A.2d 834, 836 (D.C.1995) (citation omitted).

■ In order to maintain an action for negligence, a plaintiff must prove "duty, breach of that duty, and injury proximately caused by the breach." *Board of Trustees of University of District of Columbia v. DiSalvo*, 974 A.2d 868, 870 (D.C.2009). Under a respondeat superior theory of liability, "the responsibility of an agent for his own legally careless action is imputed to the principal." *Convit v. Wilson*, 980 A.2d 1104, 1114 (D.C.2009). Here, if the waiter breached a duty of care owed to Speights [4] and that breach caused Speights' injury, the waiter's liability for negligence could be imputed to the restaurant. The trial court was not satisfied that there was sufficient evidence on causation. It was not doubted that the jury could have concluded that the fall from being hit by the door is what caused Speights' broken arm. The court's concern, however, was, "You don't know who opened [the] door."

■ Proximate cause of an injury is "ordinarily a question of fact for the jury." *McCoy v. Quadrangle Dev. Corp.*, 470 A.2d 1256, 1259 (D.C.1983). "Only if there were absolutely no facts or circumstances from which a jury could reasonably have found that appellees were negligent and that such negligence was the proximate cause of the injury, would the question have been one for the court." *Id.*

We are satisfied that the trial judge erred in her analysis of the evidence because we think that Speights presented evidence sufficient to allow a reasonable jury to fairly infer that the H2O waiter opened the door into Speights. Speights' testimony showed the door hit him from behind and the waiter fell on top of him immediately afterwards. Indeed, Speights testified that the two actions happened "kind of contemporaneous[ly]." Even though, as the trial court pointed out, Speights did not actually see the waiter push the door (since the door hit him from behind), this evidence was nevertheless sufficient to allow the question to go to the jury. *See Thompson v. Shoe World, Inc.*, 569 A.2d 187, 191 (D.C.1990) (jury would not have to speculate in order to infer that defective shoe heel caused plaintiff's injury where after stepping awkwardly with left foot and falling, plaintiff noticed left heel was broken). The evidence Speights presented, while not resolving all doubts, certainly took the issue of causation out of the "domain of speculation." *McCoy*, 470 A.2d at 1260.

■ Further, the fact that Speights' claim rested partially on circumstantial evidence was not fatal to his case. "Where there are no eyewitnesses to an accident and the cause thereof cannot be established by direct proof, then the facts which can be established circumstantially may justify an inference by the jury that negligent conditions produced the injury." *Id.* at 1259 (evidence sufficient to support inference that defective elevator caused decedent's death, where body was found at bottom of elevator shaft and elevator had a history of malfunctioning, even where accident had no witnesses); *see also Flax v. Schertler*, 935 A.2d 1091, 1102 (D.C.2007) (circumstantial evidence alone sufficient to withstand summary judgment on fraudulent inducement claim); *Janifer v. Jandebeur*, 551 A.2d 1351, 1352 (D.C.1989) (cir-

---

4. "The law of negligence generally does not acknowledge differing standards or categories of care, but requires an adherence to a uni-form standard of conduct: that of reasonable care under the circumstances." *Morrison v. MacNamara*, 407 A.2d 555, 560 (D.C.1979).

cumstantial evidence sufficient to meet burden of production on assumption of risk in negligence case). Indeed, at times, "circumstantial evidence may be more certain, satisfying and persuasive than direct evidence." *Janifer*, 551 A.2d at 1352. In this case, while we have no doubt that Speights' case would have been stronger had he actually seen the waiter pushing open the door, the circumstantial evidence was sufficient to enable Speights to meet his burden of production.

■ Because the evidence was sufficient to send the case to the jury even without considering the waiter's apparent apology, we do not resolve Speights' claim made here that the statement was improperly excluded on hearsay grounds. Although he did not present any argument in support of the admissibility of the waiter's statement in the trial court, he argues before us that the statement was admissible under three separate exceptions to the hearsay rule. Specifically, he now claims that the waiter's statement was admissible under the hearsay exceptions for excited utterance, state of mind, and present sense impression.[5] Because we are not satisfied that Speights has preserved his objection on any of those grounds, we do not decide whether the trial court erred in rejecting the statement. *See Rose v. United States*, 629 A.2d 526, 535 (D.C.1993) (points not raised on appeal are deemed waived);

*Oparaugo v. Watts*, 884 A.2d 63, 75 (D.C. 2005) (points not raised and preserved at the trial court will generally not be considered on appeal). However, because the judgment of the trial court is being reversed, we would expect that at any retrial these arguments would be presented to the trial court.

■ We also do not rule on Speights' claim that the trial court improperly excluded his expert witness testimony for the same reason—the arguments presented here were not raised in the trial court. The parties will have a renewed opportunity to address this issue if Speights elects to present his "unsafe design" theory on remand. We note, in support of the trial court's ruling in the present case, that in various contexts we have required an expert to relate his opinion to a national standard of care before his testimony will be received. *E.g., Evans–Reid v. District of Columbia*, 930 A.2d 930, 936 (D.C.2007) (opinion relating to use of deadly force by police officer when conducting routine traffic stop); *District of Columbia v. Wilson*, 721 A.2d 591, 597 (D.C.1998) (opinion relating to standard of care in medical malpractice case); *Messina v. District of Columbia*, 663 A.2d 535, 539 (D.C.1995) (opinion relating to safe construction of playground equipment).[6] However, in other contexts the specific language we have used has called this general requirement into ques-

---

5. We note that this jurisdiction also recognizes an exception to the hearsay rule for admissions by an agent or servant of a party-opponent, and that the waiter's statement, "I didn't see you," may well have qualified under that exception. *See Comford v. United States*, 947 A.2d 1181, 1185 (D.C.2008) (party admissions recognized as an exception to hearsay in the District); *Freeland v. United States*, 631 A.2d 1186, 1194 (D.C.1993) (describing rule regarding admissions of party's agent or servant as an analog to FED.R.EVID 801(d)(2)(D) and holding rule should have been applied to admit statements made by

United States Attorney against the government as the party-opponent); *District of Columbia v. Washington*, 332 A.2d 347, 350 (D.C.1975) (exception applies to statements of agents concerning matters within the agent's employment).

6. We express no view on whether the witness' testimony regarding the construction of the doors, based on the International Building Code, which has been adopted by many jurisdictions, is enough to establish a national standard.

tion. *E.g., Clark v. District of Columbia,* 708 A.2d 632, 635 (D.C.1997) ("[T]he expert must clearly relate the standard of care to the practices in fact generally followed by other comparable ... facilities *or* to some standard nationally recognized by such units.") (emphasis added); *Hughes v. District of Columbia,* 425 A.2d 1299, 1303 (D.C.1981) (in prisoner safety case, plaintiff must show "by competent expert testimony, or other supporting proof, that what occurred in the case at bar was a negligent deviation from *the demonstrated acceptable standard*") (emphasis added). We leave resolution of this issue for a case in which it is squarely before us, since in any event, Speights was entitled to present his respondeat superior theory of liability to the jury, and on that basis alone the case must be remanded.

For the foregoing reasons, the entry of judgment by the trial court is reversed and the case remanded for proceedings not inconsistent with this opinion.

*So ordered.*