*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

## Nos. 23-CV-0150 & 23-CV-0151

CHASTLETON COOPERATIVE ASSOCIATION, INC., APPELLANT,

v.

KAWAMOTO NOTES, LLC, *et al.*, APPELLEES.

Appeals from the Superior Court
of the District of Columbia
(2019-CA-008500-B & 2017-CA-008364-B)

(Hon. William M. Jackson, Motions Judge)
(Hon. Ebony Scott, Motions Judge)

(Argued June 6, 2024                    Decided August 22, 2024)

*Michael J. Goecke* for appellant.

*Ian G. Thomas*, with whom *Tracy L. Buck*, and *Lauren Mullin* were on the brief, for appellee Kawamoto Notes, LLC.

*Ian G. Thomas*, with whom *Tracy L. Buck*, *Lauren Mullin*, and *Bryan Wallace* were on the brief for appellee RFB Properties II, LLC.

Before EASTERLY, MCLEESE, and DEAHL, *Associate Judges*.

DEAHL, *Associate Judge*: Chastleton Cooperative Association appeals a grant of partial summary judgment in favor of appellees RFB Properties II, LLC, and Kawamoto Notes, LLC. This litigation revolves around a foreclosure sale affecting

ownership interests in one of the Chastleton's units. The central issues in the trial court were (1) whether that foreclosure sale was invalid because the Chastleton did not receive the required pre-sale notice of it, and (2) if the sale was valid, the extent to which the Chastleton could recoup (from the sale proceeds) unpaid rent associated with that unit prior to the foreclosure sale. The trial court skipped over the first question and, regarding the second question, granted summary judgment in favor of RFB and Kawamoto, agreeing with their position that the Chastleton was limited to recovering just three months of unpaid rent from the sale proceeds.

The Chastleton now appeals and argues that the trial court reversibly erred when it failed to address the validity of the foreclosure sale in the first instance. We agree and reverse.

## I. Factual and Procedural Background

The facts, except where otherwise noted, are undisputed. The Chastleton is a housing cooperative. It owns all of the units in its building, and its members buy shares in the cooperative that entitle them to enter into what is basically an indefinite lease for as long as they remain in good standing (by paying their rent, real estate taxes, assessments, etc.). So while a member of the Chastleton might colloquially say that they own their unit, they would be more precise to say that they own shares of the Chastleton and have an exclusive right to occupy their unit. Stephanie Sipek

became of a member of the Chastleton in 2007, at which point she was issued (1) a stock certificate reflecting her shares in the co-op and (2) an occupancy agreement memorializing her indefinite lease with the Chastleton. We call these two documents, central to this appeal, the "proprietary documents."

To finance the purchase of her membership shares, Sipek took out a loan from Bank of America ("BofA"), which in turn acquired a mortgage-like security interest in Sipek's proprietary rights in the Chastleton. Because there was no real property to serve as collateral for BofA's loan—remember, the Chastleton owns the unit itself—Sipek's proprietary documents served as the collateral for the loan. To facilitate that, the Chastleton itself was a party to the lending agreement, because in the event that Sipek defaulted on her loan and BofA foreclosed on it, the Chastleton would have to issue new proprietary documents in the name of any purchaser at a foreclosure sale. To that end, Sipek, BofA, and the Chastleton entered into a three-way agreement—called the Recognition Agreement ("the RA")—that more or less obligated the Chastleton to issue new proprietary documents to any purchaser at a valid foreclosure sale, subject to a few requirements that protected the Chastleton's rights (which we will get to in a moment). Sipek would eventually fall behind on her co-op dues and default on her BofA loan. As a result, the Chastleton took

physical possession of her unit in 2013 and BofA scheduled a foreclosure sale for June 2015.[1]

Sipek's default on her loan implicated several important provisions of the RA. First, the RA provided that in the event of a default, the lender became the owner of Sipek's proprietary documents. Second, and most importantly for our purposes, the Chastleton had an option to purchase those proprietary documents from the lender by paying off the balance of Sipek's loan, which it had to exercise within "sixty (60) days after notice to [the Chastleton] of the availability of the" proprietary documents, otherwise the option expired. Third, the lender had "no power or right to transfer, sell, assign, or otherwise dispose of the" proprietary documents unless the Chastleton approved, though the Chastleton could withhold its approval "only on the basis of" the transferee's "failure in meeting reasonable standards of creditworthiness or written cooperative occupancy standards." Fourth, if the proprietary documents were sold at foreclosure, the Chastleton had first priority to

---

[1] Bayview Loan Servicing initiated the foreclosure sale, either on behalf of BofA or on behalf of the Federal Home Loan Mortgage Loan Corporation, which apparently acquired BofA's interest in the unit before the foreclosure sale. Sorting through these various banking entities, and who was acting when, is not particularly important to this appeal, so we sometimes refer to them collectively as the "lender."

recover various dues from the sale proceeds, but only "up to three month's unpaid rent."

Now comes a critical disputed fact: the Chastleton claims, and there is evidence that strongly suggests, that the lender never notified the Chastleton about the anticipated foreclosure sale. We take that as true at this stage of the proceedings. *See Allen v. District of Columbia*, 312 A.3d 207, 212 (D.C. 2024) (We review summary judgments while "viewing the facts in the light most favorable to the non-moving party.") (citing *Aziken v. District of Columbia*, 70 A.3d 213, 218 (D.C. 2013)). The foreclosure sale nonetheless went forward in June 2015, and RFB was the winning bidder, ostensibly purchasing the proprietary documents. Things then hit a snag when RFB attempted to close on the sale and the Chastleton refused to facilitate it, i.e., it would not reissue the proprietary documents in RFB's name unless RFB agreed to pay all of Sipek's outstanding dues, including far more than the three months of back rent contemplated in the RA. That led to this litigation.

The Chastleton sued RFB and the lender seeking to nullify the foreclosure sale. It argued that the sale was invalid because the lender "failed to give requisite and prior notice of the sale to the [Chastleton]" and otherwise "failed to comply with the [RA]." RFB countersued and asked the court to direct the Chastleton to reissue the proprietary documents in its name in order to facilitate the sale, and to levy

damages against the Chastleton for obstructing the sale to that point. That counterclaim, which RFB filed as part of a consolidated pleading that included its answer to the Chastleton's complaint, included an allegation that the Chastleton was "[s]ent proper notice of the sale," though it did not describe how or when such notice was sent. Chastleton did not file an answer to RFB's counterclaim. In 2019, the lender assigned any remaining interest it had in the unit to Kawamoto Notes, and Kawamoto moved to intervene in the case. When that motion was denied, Kawamoto sued Chastleton directly, bringing similar claims as those RFB asserted in its counterclaim, along with a claim for breach of fiduciary duty predicated on Chastleton's failure to rent out the unit during the years after it took possession of it from Sipek in 2013.

RFB filed two motions for summary judgment, both of which were denied at first by Judge William M. Jackson. RFB filed a motion to reconsider the second denial, and on reconsideration, Judge Ebony Scott partially granted that second motion for summary judgment and similarly partially granted Kawamoto's motion for summary judgment on the same grounds. The court ruled that the RA governed the foreclosure sale and that under its terms, the Chastleton was obliged to reissue the proprietary documents to facilitate the foreclosure sale. It further ruled that the Chastleton could recover only three months of back rent (plus some real estate taxes and special assessments) from the proceeds of the sale. The court also granted

summary judgment to Kawamoto on its breach of fiduciary duty claim, concluding that the Chastleton was obligated to attempt to make the unit profitable on behalf of Kawamoto after the Chastleton took possession of the unit in 2013, but that it failed to do so. The court reserved judgment on the tortious interference of contract claims raised by RFB and Kawamoto, however, reasoning that "[t]here are genuine issues of material facts concerning whether [Chastleton] was aware [of] RFB's purchase of the shares and [its] assertions surrounding the closing of the sale." In other words, because the Chastleton had raised a genuine issue of material fact regarding whether it had been notified of the sale, that precluded summary judgment as to the tortious interference claims.

Chastleton now appeals the summary judgment orders,[2] and those appeals have been consolidated in this case.

## II. Analysis

We review grants of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party and drawing all inferences in that

---

[2] This court generally does not have jurisdiction to hear grants of only partial summary judgment because they are non-final orders that do not dispose of the entirety of the case. But this case fits within an exception to that rule because the orders on appeal "affect[] the possession of property." D.C. Code § 11-721(a)(2).

party's favor. *Katz v. District of Columbia*, 285 A.3d 1289, 1301 (D.C. 2022). While the Chastleton raises a number of issues in this appeal, only two of them require some discussion here.

First, the Chastleton argues that the trial court erred in granting summary judgment for RFB and Kawamoto because there was a genuine issue of material fact regarding whether the Chastleton received the requisite notice of the foreclosure sale, which in turn casts doubt on the validity of that sale. We agree. The trial court simply bypassed the Chastleton's central claim in this litigation, which is that the foreclosure sale was invalid because the Chastleton had not received prior notice of that sale. That claim, if true, meant that the Chastleton had not been afforded its contractual option to purchase the propriety documents, nor had it ever granted its contractually required approval for a transfer of Sipek's proprietary rights. Because this issue raises a threshold matter that affects virtually every other question raised in this appeal, it renders most of the parties' other arguments immaterial, save for one that we preview now.

Second, the Chastleton argues that RFB lacks standing in this case because it assigned all of its rights to the unit to Russell F. Brown, RFB's namesake and sole member, thereby leaving RFB with no stake in the litigation. At the very least, RFB has standing to *defend* against the Chastleton's suit seeking monetary relief from it.

Any standing question is thus no impediment to our considering the notice issue underpinning the Chastleton's own claims. The only question is whether RFB has standing to maintain its counterclaims. That is unclear from the record before us, so we direct the trial court to address it in the first instance on remand.

**A. There is a genuine question of material fact regarding whether the Chastleton received the requisite notice of the foreclosure sale.**

The Chastleton's central claim in this case is about notice. Namely, it claims it never received notice of the foreclosure sale. It argues that the trial court erred when it failed to so much as address this aspect of its claim, which raises a threshold matter that affects the validity of the foreclosure sale under the RA.

The Chastleton offers several compelling points in support of that position. First, the Chastleton's complaint clearly alleged that it did not receive "prior notice of the sale" so that BofA and its agents "failed to comply with the" RA's notice requirement. In response to that allegation, neither RFB nor Kawamoto has ever so much as alleged, much less produced any evidence about, the manner or timing of any notice of sale that was provided to the Chastleton.[3] Second, the Chastleton

_____

[3] RFB produced a newspaper advertisement of the sale which it appears ran in the Washington Post on several occasions between May 26 and June 4, 2016. RFB does not seem to suggest that advertisement—run for the first time just fourteen

points to an "acknowledgment"—signed by RFB (seemingly at the lender's behest)—which states that RFB acknowledges (1) that the Chastleton had to "be provided with notice of any sale or transfer of the property," (2) that the Chastleton had to "approve any transfer or sale of the" proprietary documents issued in connection with Sipek's unit, and (3) that the lender "did not obtain this approval from the [Chastleton] before conveying its interest in the [unit] to RFB" via the foreclosure sale. Third, the trial court itself seemed to acknowledge that there were genuine issues of material fact regarding whether the Chastleton received the requisite notice of the sale: it denied summary judgment on RFB's and Kawamoto's tortious interference claims because there were "genuine issues of material fact . . . surrounding the closing of the sale because [the Chastleton] was not notified" of it. The trial court simply failed to consider how that dispute about notice affects roughly every other aspect of this case: if the sale was invalid because it was in violation of the Chastleton's rights under the RA, it stands to reason that the Chastleton cannot

---

days prior to the foreclosure sale—was itself the requisite notice of sale to the Chastleton. If that is indeed RFB's argument, it raises a host of questions about whether that advertisement satisfies the notice required by the plain terms of the RA, under which Chastleton's option to purchase endured for sixty days after it received notice of any anticipated sale. Plus, it is difficult to see how that advertisement alone could be seen as satisfying the Chastleton's rights to approve, or withhold its approval, of any transferee.

be required to uphold its own obligations under the RA in the face of such an invalid sale.

RFB offers three responses, but none is persuasive.

First, RFB argues that the Chastleton has not adequately preserved its notice argument because, in its oppositions to summary judgment, it made only fleeting reference to its lack of notice and appended "no record evidence" substantiating its claim. We disagree. The Chastleton's oppositions to summary judgment were quite clear on the point, to the point of being repetitive. In response to RFB's claim that the lender "properly instituted foreclosure proceedings," the Chastleton's first opposition responded, with emphasis, that the lender "*failed to give requisite and prior notice of the sale to the* [*Chastleton*]." The Chastleton repeated the point, again with emphasis, stating that one of the two core reasons "for bringing this lawsuit was to establish, judicially, that [the lender] *failed* to properly institute foreclosure proceedings." In its opposition to RFB's second motion for summary judgment, the Chastleton repeated the same point again and again, and said little else in that two-page pleading: (1) the sale was "without [the Chastleton's] knowledge"; (2) "a public auction was held, without [the Chastleton's] knowledge"; (3) "RFB bought the Note directly from the [lender], and [the Chastleton] was not notified"; and

(4) "the sale was not valid given the fact that [the Chastleton] was never notified of" it. That is as clear as can be.

While it is true that the Chastleton did not append any particular evidence in support of that claim to its oppositions to summary judgment—it is tough to prove a negative with documentary evidence—RFB has similarly never provided any evidence of its own about how or when the Chastleton was purportedly notified of the sale. *But see supra* n.3 (discussing advertisement of the sale). In any event, "summary judgment ha[s] to be based on a review of the 'entire record,'" not simply on what is appended to the pleadings. *Pope v. Romac Int'l*, 829 A.2d 945, 947 (D.C. 2003) (citing *Reynolds v. Gateway Georgetown Condo. Ass'n*, 482 A.2d 1248, 1251-52 (D.C. 1984)). And there is clear evidence in support of the Chastleton's claimed lack of notice by way of RFB's seeming acknowledgement that the Chastleton had not received the required notice of the foreclosure sale. On the other side of the scale, we see nothing supporting RFB's conclusory claim that the lender provided the Chastleton with the requisite notice of the sale, a claim which (if true) would be comparatively easy to establish through documentary or testamentary evidence.

Second, RFB argues that the Chastleton effectively admitted that it received proper notice of the sale because it failed to respond to RFB's counterclaim, in which

it had alleged that the Chastleton was "[s]ent proper notice of the sale." Again, we disagree. While it is true that a party might be deemed to have admitted a fact alleged in a complaint or counterclaim if it fails to respond to it, *see* D.C. Super. Ct. Civ. R. 8(b)(6), we doubt that rule has any application here. The Chastleton had already alleged in its own complaint—initiating these proceedings and before RFB filed its countersuit—that it did not receive prior notice of the sale. So it would be a harsh and strange application of Rule 8 to conclude that the Chastleton admitted a fact by failing to file a responsive pleading to a counterclaim, when it had previously made clear (prior to the counterclaim) its position that it was denying that very fact. RFB cites to no support for applying Rule 8(b)(6) in that scenario.

In any event, RFB's claim that the Chastleton was "[s]ent proper notice of the sale" is not truly a factual claim capable of being admitted—it is a legal claim. It does not allege any manner or timing of notice, but instead offers only the conclusory legal assertion that some "proper notice" was sent. The "failure to deny conclusions of law does not constitute an admission of those conclusions" under Rule 8. *Thompson v. DeWine*, 976 F.3d 610, 616 n.5 (6th Cir. 2020) (interpreting Fed. R. Civ. P. 8) (quoting 5 Wright & Miller, Fed. Prac. & Pro. § 1279 (3d ed.)); *see also Elmore v. Stevens,* 824 A.2d 44, 46 (D.C. 2003) ("The defendant is not held . . . to admit conclusions of law."). So even if we thought Rule 8 applied in this posture, this is not a point that could be deemed admitted by a failure to respond.

Third, RFB argues that any failure of notice was the fault of the lender who initiated the foreclosure sale, so that the Chastleton should effectively take it up with them. The Chastleton had in fact done that very thing before it voluntarily dismissed the lender from this litigation, and in RFB's view, that "dismissal operates to bar Chastleton's position" now. We disagree yet again. RFB's own claims are predicated on its position that it was a valid purchaser of the lender's rights under the RA, and whether or not that is true turns on whether the Chastleton received the required notice of the sale. What's more, there is evidence in the record that RFB was aware of and acknowledged the fact that the Chastleton had not received prior notice of the sale, and that RFB assumed the risk that the sale was invalid on that very basis. It cannot seek to avail itself of its rights under the RA to compel the Chastleton to reissue the proprietary documents in its name and at the same time disavow the lender's obligations under the RA. It is thus RFB, and not the Chastleton, who must take its complaints up with the lender if in fact it purported to convey the proprietary documents without the legal authority to do so. It will likely have a hard time doing that given RFB's seeming acknowledgment that it was aware that the lender did not provide the required pre-sale notice.

**B. It is unclear if RFB is the proper party to pursue its counterclaims.**

We briefly address the Chastleton's additional argument that RFB does not have standing to maintain its countersuit because it assigned its interest in the unit to its sole member, Russell F. Brown. At the outset, we note that it is the Chastleton who initially sued RFB seeking both declaratory and monetary relief on account of the foreclosure sale being invalid. So there is no question that RFB has standing to *defend* against those claims—defendants virtually always have the requisite interest in defending against a suit, it is only plaintiffs who have to establish standing by showing the familiar "injury," "cause," and "redressability." *See Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1265 (11th Cir. 2015) ("[A]ny defendant against whom relief is sought will generally have standing to defend due to its exposure to an adverse judgment, the threat of which is imminent."); *Grayson v. AT&T Corp.*, 15 A.3d 219, 229 (D.C. 2011) (en banc) (explaining that "the basic function of the standing inquiry is to serve as a threshold *a plaintiff* must surmount before a court will decide the merits") (emphasis added); *California v. Texas*, 593 U.S. 659, 668-69 (2021) ("A *plaintiff* has standing only if he can" satisfy the three core requirements.) (emphasis added). That means that any standing deficiency is no impediment to our consideration of the notice issue just discussed: that was central to the Chastleton's claims as plaintiffs, and RFB plainly had sufficient interest to defend against the Chastleton's claims for monetary relief.

The only standing question is thus whether RFB had standing to bring its own claims via countersuit. The Chastleton says it does not. It points to a statement in RFB's counterclaim where RFB asserted that its "interest in the property and proceedings subject to this action have been assigned to Russell F. Brown, individually." RFB counters that this is no basis to disturb the trial court's ruling because "there is no other information about the putative assignment, including when it occurred, what precise rights were assigned, whether it was qualified or conditional, and when the assignment would take effect." We agree with RFB that the factual record regarding its standing to pursue its counterclaims is underdeveloped. And "[b]ecause the Superior Court did not resolve factual issues germane to standing, we conclude that a remand is necessary for that court, after conducting any further proceedings it deems necessary, to resolve the factual question on which jurisdiction depends." *Moeller v. District of Columbia*, 253 A.3d 165, 172 (D.C. 2021).

This issue is likely a tempest in a teapot, however, because if RFB is not the proper party to maintain the counterclaims—an argument that the Chastleton raises for the first time on appeal—then RFB must be afforded an opportunity to substitute Brown as the real party in interest. *See* D.C. Super. Ct. Civ. R. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in

interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.").

### III. Conclusion

For the foregoing reasons, we reverse the trial court's grants of summary judgment and remand for further proceedings.

*So ordered.*